1823.

Jackson
vs
Union Bank

JUNE.

JACKSON vs. THE UNION BANK OF MARYLAND.

An agent is not answerable for negligence or inattention, where a bill of exchange was placed in his hands for collection, and he undertook to collect it, according to the usages and customs of merchants and banks, by sending it to a bank for collection, and owing to the bill having been demanded and protested for nonpayment on the fourth day after it fell due, the endorsor was discharged, and the amount of the bill thereby lost.

If a foreign merchant sends goods to his consignee, with instructions to dispose of them for him to the best advantage, and the consignee sends them to auction for sale, and the auctioneer makes way with them, or sells them, and makes way with the money, and fails, the consignee is not answerable.

The refusal of the county court to strike out a judgment by default, and suffer the defendant to plead, is not a subject of appeal, and cannot be revised by the court of appeals. (note).

The county court cannot assess damages on a judgment by default, to the amount of a bill of exchange, in an action against the endorsor, the declaration setting out no cause of action, but showing that the bill was not presented for payment in time, whereby the defendant was in law discharged from all liability on account of his endorsement. (note.)

APPEAL from Baltimore county court. This was a special action on the case, brought by the appellant against the appellees. The declaration charged the defendants below with unskilful management of the concerns of the plaintiff. It contained two counts, to both of which objections were taken; but as the court did not decide the case on those objections, it is unnecessary to set out the declaration. The general issue was pleaded; and at the trial the plaintiff gave in evidence, that being a merchant, extensively engaged in commerce in the city of Baltimore, he was, as such, a customer of the defendants, and was in the habit of depositing his money with them for safe keeping, and of delivering the promissory notes and bills which he held, whether payable in Baltimore, or elsewhere in the Atlantic commercial cities, to the defendants, to collect for him, and in case such notes and bills were not paid, they were to be returned by the defendants to him. That being the legal owner and holder of a bill of exchange for $684 95, drawn at Baltimore on the 2d of November 1810, by John Chalmers, junior, upon John Chalmers of the city of Washington, payable six months after date to William Hawkins, or order, endorsed by Hawkins to the plaintiff, and accepted by the drawee, he delivered the same to the defendants on the 1st of May 1811, to be by them collected from John Chalmers, the acceptor, when the same should become due according to law, and the defendants received

1825.
Jackson
vs
Union Bank

the said bill of exchange for that purpose. He also gave in evidence, that the defendants did not cause any demand to be made for payment of this bill on the acceptor, until the 6th of May 1811, when the acceptor refused to pay it. That a protest was immediately made, and notice of the nonpayment by the acceptor given to the drawer and endorser, by letter dated the 6th of May 1811, which was immediately forwarded by mail. That the plaintiff then applied to *William Hawkins,* the endorsor, for payment, which he also refused to make, and he then instituted suit against *Hawkins* on the bill, in *Baltimore* county court, where he obtained a judgment by default, from which judgment *Hawkins* appealed to the court of appeals, where it was reversed. The record and proceedings in that case, it was agreed should constitute a part of the present. [*See that case reported at the end of this.*] The plaintiff further gave in evidence, that *John Chalmers,* junior, the drawer of the bill, and *John Chalmers,* the acceptor, became insolvent about the time the bill became due, and have been regularly discharged under the insolvent laws of this state, and of the District of *Columbia,* and that the plaintiff has never received any part of the amount of the bill. The defendants then gave in evidence, that having received the bill from the plaintiff on the 1st of May 1811, for the purpose of collection, as stated in the plaintiff's evidence, they enclosed the same, on the 2d of May 1811, in a letter from their cashier, addressed to *William Whann,* the cashier of the *Bank of Columbia,* which bank was the established agent and correspondent of the defendants, for the transaction of all such business, in the city of *Washington* and *George-Town.* The letter of the 2d of May 1811, was sent by mail, and by the regular course of the mail would reach *William Whann* in the afternoon of the 3d of May; and that *Whann* caused the demand to be made on the 6th of May 1811. They also gave in evidence, that it was the custom at that time, and constantly before, in the District of *Columbia,* for the banks there to cause a demand for payment of bills of exchange and promissory notes to be made on the *fourth* day after they became due, and not before. They also gave in evidence, that it is the universal custom for banks in the city of *Baltimore,* who collect for their customers notes or bills payable at a distance from *Baltimore,* to use the banks of the

1823.

Jackson
vs
Union Bank.

place, where the collections are to be made, as agents in making such collections. On this evidence the defendants prayed the court to direct the jury, that the plaintiff was not entitled to recover. Which direction the court, [*Dorsey*, Ch. J. *Hanson* and *Ward*, A. J.] gave to the jury. The plaintiff excepted; and the verdict and judgment being against him, he appealed to this court.

The cause was argued before BUCHANAN, EARLE, MARTIN, and STEPHEN, J.

*Winder* and *Mayer*, for the Appellant, contended, that the defendants below were responsible to the plaintiff for the damage which he had sustained by reason of the delay in presenting for payment, and protesting the bill in question. They referred to *Jones on Bail*. 60. 1 *Livermore on Agency*, 338. *Sheills vs. Blackburne*, 1 *H. Blk. Rep.* 162. The plaintiffs should have cautioned the *Bank of Columbia*, their agents, of the erroneous practice of protesting bills on the fourth day after they became due. There was a want of due care in this particular. They had notice of the fact of that practice, and were put on their guard. *Burrell vs. Philips*, 1 *Gallison*, 362. *Comber vs. Anderson*, 1 *Campb* 524. 1 *Livermore*, 353. Negligence and diligence of parties is a question of law for the court. In *Hawkins vs. Jackson*, this court decided that the endorsor was not liable on the very bill in question.

*Taney* and *Mitchell*, for the Appellees, contended, that the law would imply the usage of collecting through the banks in *Columbia*, to be known to the appellant, as he had before collected in the same way. The defendants undertook the collection of the bill without consideration, and they could not be liable but for gross negligence. *Sheills vs. Blackburne*, 1 *H. Blk. Rep.* 162. Here the same diligence was used by the defendants as they were accustomed to use in their own concerns. They referred to *Smith vs. Lascelles*, 2 *T. R.* 188, *(note.)*

The opinion of the court was delivered by

BUCHANAN, J. It is contended, on the part of the defendants, that the proof offered at the trial by the plaintiff, and stated in the bill of exceptions, does not correspond with the agreement set out in the declaration, and that for the variance between the *allegata* and the *probata*, the

plaintiff is not entitled to recover. It is not necessary to examine this technical objection to the plaintiff's right of recovery, there being quite enough without it to defeat the action. *John Chalmers*, on whom the bill of exchange was drawn, resided in the City of *Washington*, in the District of *Columbia;* and it is stated in the declaration, that the defendants undertook and promised to collect the amount, according to the usages and customs of merchants and banks in the city of *Baltimore*. Now what is that usage? Why it is stated in the bill of exceptions to be the universal custom of the banks in the city of *Baltimore*, that collect for their customers, (who are the merchants,) notes or bills payable at a distance from *Baltimore*, to make use of other banks as their agents in making such collections. So far, then, as respects the sending of the bill of exchange in question to a bank in the District of *Columbia* for collection, the defendants acted in strict conformity with their engagement; and having received it on the first of May 1810, and enclosed it on the day following to the cashier of the *Bank of Columbia*, their established agent for the transaction of all such business in the city of *Washington* and *George Town*, by mail, in a letter, which, according to the regular course of the mail, would reach its destination on the third day of May, two days before it became payable, according to its tenor, and the law merchant of this state. Surely no negligence or inattention is imputable to them in relation to that part of the transaction; nor is it pretended that any loss was sustained by reason of delay in sending on the bill. They sent it for collection, in convenient and reasonable time after it was received by them, to a respectable agent, an institution of high standing, and dealt with it, as it was their known and established custom to deal with all notes and bills to be collected in the District of *Columbia*, without any imputation of unfairness in the course they pursued. But it is urged, in behalf of the plaintiff, that in consequence of the demand on the acceptor of the bill for payment, and protest for nonpayment being made on the fourth day after it fell due, he has been unable to recover against the endorser, who lives in the city of *Baltimore*, and that the defendants ought to be answerable for the negligence of the *Bank of Columbia* in not making the demand and protest on the third day of grace, according to

the law of this state.  But it appears to have been the uniform custom of all the banks within the District of *Columbia*, to cause demand and protest to be made on the fourth day, and that the *Bank of Columbia*, in this instance, pursued the settled custom.  How far that custom is to be regarded as the law of the District, it is not necessary in this case to inquire.  It was the universal custom of the banks in *Baltimore* to collect notes and bills for their customers, payable at a distance, by the agency of other banks.  The plaintiff was a customer of the *Union Bank of Maryland*, established in *Baltimore*, made all his deposits there, and placed there for collection all his notes and bills, whether payable in *Baltimore*, or elsewhere; he was a merchant extensively engaged in commerce, and must be supposed to have had a knowledge of the uniform and established mode of making such collections by the banks, and particularly the *Union Bank of Maryland*, in which he did all his business of that character.  This bill of exchange was payable in the District of *Columbia*, and the placing it with the defendants for collection was equivalent to an agreement that it should be sent by them for that purpose to some bank in the District of *Columbia*, to the *Bank of Columbia*, their established agent, thus virtually constituting the *Bank of Columbia* his agent in that transaction, and if that agent did, in conformity with the custom in the District of *Columbia*, neglect to cause demand and protest to be made on the proper day, the defendants are not chargeable with any negligence, or other improper conduct.  If they are to be presumed acquainted with the custom of the banks in the District, the same may be predicated of the plaintiff, and that he placed his bill with them for collection, according to that custom, as it was their practice to do, in relation to all other notes and bills payable there.  This transaction is not affected by the general law of bailment, except so far as concerns the transmitting of the bill to the *Bank of Columbia*; and if it had not been transmitted in due time, the defendants would be answerable for any loss sustained by reason of such negligence.  But the bill was sent on, in good time, and no negligence is chargeable to the defendants.  Suppose a foreign merchant sends goods to his consignee in *Baltimore*, with instructions to dispose of them for him to the best advantage, the consignee sends

them to auction for sale, and the auctioneer makes way with the goods, or sells them and makes way with the money, and fails—In such a case, (to which this in principle may be aptly likened,) the consignee would clearly not be answerable.

## JUDGMENT AFFIRMED. (a).

(a) HAWKINS vs. JACKSON, referred to in the preceding case, was in this court at June term 1816, on an appeal from Baltimore county court. It was an action of assumpsit, brought by the appellee against the appellant as the endorsor of an inland bill of exchange. The declaration contained only one count, which stated that the bill was dated on the 2d of November 1810, drawn at Baltimore by John Chalmers, junior, upon John Chalmers, senior, at Washington, in the district of Columbia, requiring him, six months after date, to pay to the defendant, or order, $684. 95, which bill was accepted by John Chalmers, senior, and endorsed by the defendant to the plaintiff. That it was on the 6th of May 1811, presented to John Chalmers, senior, at Washington, in the district of Columbia, to wit, at the county aforesaid, for payment, and he was then requested to pay, &c. but that he then and there, at Washington, in, &c to wit, at, & c. wholly failed, and made default, whereof the defendant had notice; and thereby and by reason thereof, and of the several other premises, and by force of the custom and law of merchants, the defendant became liable to pay to the plaintiff, and being so liable he promised, &c. At the return day of the writ, March term 1812, the defendant appeared in proper person, and gave special bail, and a rule was then laid on him to plead by October term following, at which term the rule was extended to March term 1813, when the defendant having failed to plead, the court assessed the plaintiff's damages to $762 27, and entered judgment for the damages laid in the declaration, and costs; to be released on payment of the above sum, with interest thereon from the 23d of April 1813, and costs. Afterwards, and during the same term, the defendant appeared in court by counsel, and with the leave of the court filed an affidavit, stating that he had spoken to Luther Martin, esquire, one of the attorneys of the court, to appear for him and defend the action, soon after it was instituted, who promised to do so; and that he had no information to the contrary, until he was informed that judgment was rendered against him. That he had been informed that the suit could not be maintained against him, because the bill of exchange had not been protested in due time, and that no demand was made on the acceptor of the bill in due and proper time after it became due. That he had no knowledge of the nonpayment of the bill, until a week or ten days after it became due, and then it was mentioned to him by a gentleman in Baltimore. The plaintiff then filed in court his statement of the transactions between the drawer, endorsor and acceptor, and himself, relative to the drawing, accepting and endorsing the bill; and he also filed in court the bill, and the protest thereof made on the 6th of May 1811. The defendant then prayed the court to order the judgment to be stricken out, and that the defendant be permitted to plead non assumpsit, and he offered to proceed to the trial of the action at the present term without delay, or to continue the action until the next term, if desired by the plaintiff. But the court, [Bland, A J ] was of opinion, that the judgment ought not to be struck out, and refused the defendant's prayer. The defendant excepted, and appealed to this court.

The cause was argued at this term, (June 1816,) before BUCHANAN, NICHOLSON, EARLE, JOHNSON, and MARTIN, J.

*Marginal note:* The refusal of the county court to strike out a judgment entered by default, and suffer the defendant to plead, is, not a subject of appeal, and cannot be revised by the court of appeals.

The county court cannot assess damages on a judgment by default, in an action against the endorsor of a bill of exchange, where the declaration does not set out a cause of action, but shows that the bill was not presented for payment in time, whereby the defendant was in law discharged from all liability on account of his endorsement.

1823.

Jackson
vs
Union Bank

*Martin,* for the appellant, 1. As the judgment was entered by default for want of a plea, on the application of the defendant, and showing merits, it ought to have been stricken out. 2. Instead of awarding an inquiry of damages, the court assessed the damages on the bill of exchange, when there was no act of assembly authorising them to do so. 3. The declaration was on a bill of exchange, dated the 2d of November 1810, payable at the end of six months, and it was not protested until the 6th of May 1811, which was not in due and legal time.

On the *first point,* he referred to *Briscoe vs Ward,* 1 *Harr. & Johns* 165. *Cavil vs. Burneford,* 1 *Burr* 568. 1 *Sellon's Pr.* 346.

On the *second point,* to 7 *Vin. Ab.* 315, pl. 6, 7, 8. 2 *Lill Pr. Reg* 67. *Vent.* 347 2 *Show.* 86. 1 *Rich. Pr C. P.* 223. 2 *Barnes,* 192. *Messin vs. Massareene,* 4 *T. R.* 492. 1 *Sellon's Pr.* 347. *Chitty on Bills,* 101, 102. Act of 1785, *ch.* 38.

On the *third point,* to *Chitty on Bills,* 138, 143, *Philips vs. M'Curdy,* 1 *Harr. & Johns.* 187. *Chase vs. Taylor,* in this court at December term 1815.

*W. Dorsey,* for the Appellee. 1. The refusal of the court below to allow a plea to be amended, or to grant a new trial, or to continue a cause, is not to be assigned for error; and there is no difference in refusing to permit the defendant to amend his plea, and refusing him to put in a plea and strike out the judgment. He referred to *The Marine Insurance Company of Alexandria vs Hodgson,* 6 *Cranch,* 206 *Greene vs. Hearne,* 3 *T. R.* 302 2 Suffering judgment to go by default was an admission of the contract, declared on He referred to *East India Company vs Glover,* 1 *Stra.* 612. *Tidd's Pr.* 523. *Bevis vs. Lindsell,* 2 *Stra* 1149 *Barnes,* 233, 234. *Anonymous,* 3 *Wils.* 155. *Thellusson vs. Fletcher,* 1 *Doug.* 316. *Longman vs Fenn,* 1 *H. Blk Rep.* 541. The court might assess damages on a promissory note, or bill of exchange, without a writ of inquiry; he referred to *Tidd's Pr* 514 *Shepherd vs. Carter,* 4 *T. R* 275. *Rashleigh vs. Salmon,* 1 *H. Blk Rep* 252 *Andrews vs Blake,* Ibid 5 9. *Longman vs. Fenn,* Ibid 541. *Thelluson vs. Fletcher,* 1 *Doug.* 316. *Messin vs. Massareene,* 4 *T. R* 493. *Goldsmid vs Taite,* 2 *Bos & Pull* 55 *Berthen vs. Street.* 8 *T R.* 326. *Nelson vs. Sheridan,* Ibid 395. *Byrom vs Johnson,* Ibid 410. *Osborne vs. Noard,* Ibib. 648, and *Sellon's Pr.* 347.

BUCHANAN, J. delivered the opinion of the court. The refusal, by the court below, to strike out the judgment by default, and suffer the defendant to plead, is not a subject of appeal, and cannot be revised by this court. But that court did wrong in assigning damages to the amount of the bill of exchange, the declaration setting out no cause of action, but showing that the bill of exchange, on which the suit was brought, was not presented for payment in time, whereby the defendant was in law discharged from any liability on account of his endorsement.

JUDGMENT REVERSED.