## CITIZENS BANK OF BALTIMORE *vs.* JOHN A. HOWELL & BROTHERS.

In this State when a note or bill is received in the ordinary course of business, without any special agreement on the subject, by a bank for collection, and the bank in due time delivers it to the notary usually employed by it in such matters, so that the necessary demand, protest and notices may be made and given, the bank will not be answerable for loss resulting from the failure of the notary to perform his duty.

The act of 1837, ch. 253, makes protests of inland bills and promissory notes *prima facie* evidence, and to secure the benefit of this law to the owners of such instruments it is the duty of the banks receiving them for collection to place them in the hands of a notary that they may be protested in due time when necessary.

APPEAL from the Court of Common Pleas for Baltimore city.

*Assumpsit* by the appellees against the appellant to recover the amount of a promissory note for $122.11, at sixty days, dated the 25th of March 1851, drawn by Wesley F. Walter in favor of Edmond T. H. Walter, the payee, who endorsed it to the plaintiffs, who deposited it with the defendant, the bank, for collection, and the amount of which, the declaration alleges, was lost to the plaintiffs by the neglect of the notary public employed by the bank, in not properly notifying the endorser of the dishonor of the note by the maker. Plea, *non assumpsit.*

*Exception.* The plaintiffs offered in evidence the protest of the note by the notary, stating that it was presented at the place of business of the maker, and the reply was, that it could not be paid; and that the notice of this dishonor for

the endorser "*was left at Wesley F. Walter's.*" They then proved the handwriting of the maker and endorser, and that before its maturity, viz., on the 24th of March 1851, they deposited it with the Citizens Bank for collection; that Duvall, a notary public, called at their store on the 27th of May 1851, with the note, and asked if they wished it protested, and was informed that they did; and that the maker resided in Caroline street; and the place of business of the endorser was No. 3, West Pratt street; and that the maker was insolvent, but the endorser was good. They further proved, that the endorser's place of business is at No. 3, West Pratt street, but that his name was not upon the sign over the door; and that his place of residence was in East Baltimore street, in 1851; they further offered in evidence the City Directory for 1851, showing the endorser's place of business to be at No. 3, West Pratt street, and the maker's residence in Caroline street at the time of the protest.

The defendant then proved by Duvall, the notary, that he was a duly commissioned notary in the city of Baltimore; that it is the universal usage and custom of the banks in that city to cause demand, protest and notice to endorsers to be made and given by a notary in case of inland as well as foreign bills of exchange and promissory notes; and that he was in the habit of discharging those duties for the defendant, the Franklin Bank, and Purvis & Gover, bankers; that the note in question was handed to him by the bank on the day of its maturity, with directions to enquire of the plaintiffs whether they wished it protested; that he called at their store and enquired of their clerk if they wished it protested, and the reply was that they did; that he then enquired of the same party where the maker and endorser resided, and was informed that they resided in Caroline street; that he has no recollection that he said the endorser's place of business was at No. 3, West Pratt street, and does not believe he did, because in going to Caroline street he had to pass immediately by the door of No. 3, West Pratt street, and would, of course, have called; that he had difficulty in finding their residence in Caroline street, and meeting with a man at work he asked him where the maker and endorser

resided, and was told on the opposite side of the street, pointing to the house, that he called at the house and inquired of a lady who came to the door, if Wesley F. Walter was in, she replied no; he then asked if Edmond T. H. Walter was in, she said no; witness then handed her a notice and requested her to give it to him when he came in. The defendant also offered in evidence the Directory of 1849, and also that of 1851; in the first of which the endorser's residence is given, viz., West Fayette street, and in the latter no residence is recorded. The defendant also proved by the cashier of the Union Bank, that it is the universal custom and usage of the banks in the city of Baltimore to cause demand, protest and notice to be done by a notary of bills and notes, as well those deposited with the banks as their own. The defendant then asked the following instructions to the jury:

1st. That if they shall believe from the evidence in the cause, that the note in question being duly made and endorsed, was, on the 24th of March 1851, deposited with the defendant for collection; that it was duly handed to Duvall, a notary duly appointed and commissioned for the city of Baltimore, and that he having enquired at the counting-house of the plaintiffs was informed that the drawer and endorser both lived in Caroline street, and made other inquiry and was also informed by others that they resided in Caroline street, and that notice was accordingly left at said place, and at the same time directed to the said endorser; and notice was also given to the plaintiffs on said day at their place of business and between said hours; that it is the universal custom and usage of banks in the city of Baltimore to hand all notes to a notary of said city for presentment and notice, as well such as are left with them for collection as those belonging to them, then the plaintiffs are not entitled to recover, although the jury may further find that the endorser did not reside with the maker, but had a residence in another part of the city but not recorded in the Directory for the year 1851; and also had a place of business which was named in the Directory for said year, and that said notary, as soon as he had ascertained that he had mistaken the residence, gave notice to said endorser, *first*, because the

defendant is not responsible for the want of due diligence, if any, on the part of the notary; and *secondly,* because due diligence was used by the notary as well as by the defendant.

2nd. That the bank having complied with its uniform usage as well as the usage of the banks of the city of Baltimore, by delivering the note at the regular time to the notary public, had entirely discharged its duty and relieved itself from all responsibility in the premises to the plaintiffs.

3rd. That the notary public was not in any wise the agent of the bank, he being a public officer, created as such by the law, upon whom devolves all the responsibility arising from a failure to perform his official duties in a proper manner, and that therefore the bank was not responsible for any failure of duty on the part of the notary.

4th. If the jury find that it is the usage of the banks in the city of Baltimore to cause all demands, protests and notices to be made and given by a notary, that the bank in this case is not responsible for the acts of the notary, unless they believe that there was a special contract by the bank to be responsible for the acts of the notary, of which there is no evidence.

These instructions the court, (MARSHALL, J.,) refused to give, but was of opinion and directed the jury as set out in the opinion of this court. "To which opinion and direction of the court to the jury" the defendant excepted, and the verdict and judgment being in favor of the plaintiffs the bank appealed.

The cause was argued before LE GRAND, C. J., ECCLESTON and MASON, J.

*D. C. H. Emory* and *Thos. S. Alexander* for the appellant.

The appellees suppose the only question open on the exception involves the propriety of the instruction given by the court to the jury. But it is apparent from the structure of the whole exception, that the appellants intended to except as well to the refusal of the court to give the instructions prayed for as the instruction actually given. The instruction is, in truth, a response to the prayer, and involves the very contrary of the pro-

positions advanced by the defendants. Thus the court say, there is evidence of a special contract by which the bank guaranteed the plaintiffs against the neglect of the notary. The defendant had insisted that there was no such evidence. The court instructed the jury that there was evidence of negligence or omission on the part of the notary. The defendant had asked for an instruction, that upon the facts offered in evidence the charge of negligence was not made out. Conceding, then, for sake of the argument, that in the general an exception to the instruction actually given will not entitle the party to contest the propriety of the court's refusal to give the instruction prayed for, it is insisted that the rule does not apply to a case like the present, where the subject of the instruction is identical with the subject of the prayer, and the instruction is intended as a response to the prayer. In such case the instruction is wrong if the prayer ought to have been granted.

We propose to discuss, in the first place, therefore, the propriety of the defendant's prayers, and then the propriety of the court's instructions to the jury. The plaintiffs' case supposes that the notary was guilty of negligence, and that the defendant is liable for such neglect of the notary. We shall endeavor to show that there was no negligence on the part of the notary, and next, assuming there was negligence, that the bank is not responsible therefor.

When the holder is ignorant of the place of residence of an indorser, he may excuse his failure to give notice of the dishonor of the bill or note to such party, by showing that he used reasonable diligence in the effort to ascertain the place of residence of the party, but without success. And if, on inquiry of persons whom he has fair reason to believe can give him correct information on the subject, he does receive information which he credits and acts on, he is likewise excused.

Reasonable diligence is that degree of diligence which men of ordinary habits of attention to business usually devote to their own affairs. What is reasonable diligence depends on the special circumstances, and is usually, therefore, a mixed question of law and fact. But where the state of facts is given or assumed, it becomes a question of law to be determined by

the court. For the rule and its application, we refer to *Chitty on Bills*, 453, and *passim.*, and especially to 4 *How.*, 336, *Harris vs. Robinson*, and 9 *How.*, 552, *Lambert vs. Ghiselin;* in this last case the bill, being protested in Baltimore in the year 1846, was returned to the holders in Alexandria. They addressed notices to the indorser at Nottingham. They acted on information received from a person who had, prior to the year 1842, sailed a vessel between Nottingham and Alexandria; and showed there was in 1846 little intercourse between the two places; and that there was no one in Alexandria who was likely to give more correct information on the subject. In fact, the indorser resided in early life in Nottingham, but had removed thence as early as the year 1839. But the Supreme Court were of opinion, that due diligence had been used by the holder and the indorser was held liable. In the present case the notary addressed himself to the plaintiffs, and by the clerk he was informed that the maker and indorser resided together in Caroline street. He proceeded thither, making inquiry of a number of persons on the street. At length he met a laborer, in his shirt sleeves at work, of whom he inquired where the maker and indorser resided, and by him he (the notary) was told that they resided in a house on the opposite side of the street, to which the laborer pointed. He called at that house and was met at the door by a lady, who, to his inquiry whether the drawer was in, answered no. The notary then handed her a notice addressed to the indorser, and requested her to hand it to him when he came in. On the same day notice of dishonor was also given to the plaintiffs. The plaintiffs attempted to prove, that their clerk had also informed the notary that the indorser had a place of business in Pratt street. But the notary has no recollection of any such statement having been made, and the reason stated by him would seem to be conclusive on the subject. He passed through Pratt street on his way to Caroline street, which is beyond the limits of business in Baltimore and is comparatively an obscure street, and there wasted time in making inquiries which would have been unnecessary if the notary had understood that the drawer had a place of business in Pratt

street. On the whole evidence it is admitted, that the notary evinced a strong desire to discharge his duty—that he labored faithfully to discharge his duty—and that he really believed he had in good faith acquitted himself of his duty. What more can be expected in any case?

But again, the plaintiffs have failed in proving any special agreement between them and the bank. They deny that the usage of the bank, to hand over all bills and notes to the notary, can bind them. They trusted to the bank. The notary was the bank's agent; and what was done and what was omitted to be done by the agent, are to be treated as done and omitted by the bank itself. The General Law Merchant is, therefore, to be invoked to determine whether the bank, as collecting agent, has fulfilled its duty. Now we apprehend it is clear, that the holder of a bill is bound to give notice to such of the parties as he proposes to hold answerable to himself. If he gives notice to the last indorser only, this latter has the right, and if he deems it essential to his own indemnity, must give notice to the prior parties in obligation on the paper. If the demand is made by an agent, it is sufficient that he give notice of dishonor to his principal, and it then becomes necessary for the principal to give the proper notices to the prior parties to be fixed. 3 *Bos. & Pul.*, 599, *Haynes vs. Birks;* 8 *Barn. & Cres.*, 387, *Firth vs. Thrush*, and 2 *Johns. Cases*, 1, *Tunno vs. Lague,* will be sufficient on this point. Now, it is put to the jury to find, as a part of our case, that the notary gave a notice of dishonor to the plaintiffs on the very day on which the note became payable. Again, the general law does not require that the notary shall assume the office of a general directory, and know at his peril the residence of every one who may become a party to negotiable paper. He is at liberty to apply to the holder for direction, and if the holder undertakes to give information which turns out to be erroneous, the loss must be borne by himself. In this case the notary informed the plaintiffs that the note was in his hands; he inquired whether the note was to be protested if not honored, and where the indorser was to be found. He was informed by the holder that the indorser resided on Caroline street.

He betook himself accordingly to Caroline street, and whilst there made every effort to discover the house wherein the indorser was supposed to reside. The charge now is that he was misled by the holders. Conceding, then, for the sake of the argument, that there was neglect on the part of the notary, we deny that the appellant is liable for the consequences thereof.

It was proved to be the invariable usage of the banks in Baltimore to cause demand, protest and notices to indorsers to be made and given by a notary, in the case of inland as well as foreign bills and notes. And the prayer puts it to the jury to find that this usage exists, as well in relation to bills and notes left with the banks for collection as to those which are issued by them. Of this usage the plaintiffs had actual notice; and in the absence of such proof, it would be presumed that they had notice thereof and that their deposit was made with reference to the usage. 11 *Wheat.*, 431, *Mills vs. Bank of the United States.* The placing of the note with the defendant was equivalent to an agreement, that it should be delivered by the defendant to a notary for the purpose of demand and protest, in accordance with the usage. 6 *H. & J.*, 150, *Jackson vs. Union Bank.* The usage is reasonable in itself and highly proper to be observed, since the act of 1837, ch. 253, makes the protest *prima facie* evidence of the facts of demand and notice of dishonor to the indorsers. The usage was obligatory on the bank. If it had failed to hand the note over to the notary, and by such failure had deprived the plaintiffs of the facilities for establishing their case against the indorsers, which would have been supplied by the protest, the bank might have been held answerable for all the consequences of the default. But if the plaintiffs had a right to require the delivery of the note to the notary, in order to insure to them the advantages to be derived from a notarial protest, and if the omission to deliver the note over to the notary would have been culpable negligence on the part of the bank, with what color of justice can it be pretended that the bank, which has delivered the note to the notary in deference to the usage, shall be responsible for the defaults of the notary in the performance of his

duty? In 4 *Whart.*, 105, *Bellemire vs. Bank of United States* and same case in 1 *Miles*, 173, it was expressly adjudged, that where a bank receiving a note for collection, hands it over to a notary for the purposes of demand, conformably to the usage of the bank, it is not liable for any act or default of the notary. *Vide* also 1 *La. An. Rep.*, 13, *Baldwin vs. Bank of Louisiana.* 17 *La. Rep.*, 560, *Hyde vs. Planters Bank.*

It is undoubtedly a general rule, that an agent cannot delegate his authority, and is, therefore, in the general, held to answer for the deficiencies of the persons employed by him. They are treated as his agents. But the usage of trade sometimes requires, and at other times justifies, a departure from the rule. And where, in deference to usage, the deputy is selected, he becomes the agent of the principal, and is answerable to the principal for any negligence in the discharge of his duty. The agent is never responsible for the defaults of a deputy who has been appointed, according to the usage of trade, to assist him in the performance of his agency. *Story on Agency*, sec. 201. 1 *G. & J.*, 147, *Pawson vs. Donnell.*

Thus it is settled, that the owner or master is not liable for a collision happening whilst the vessel is in charge of a licensed pilot. In 22 *Conn.*, 213, *Windham Bank vs. Norton*, it was held, that the holder is not responsible for delay occasioned by miscarriage of a letter containing a note through the negligence of the post-office. These cases are strictly analogous to the case of the notary, who, like the pilot and the postmaster, is clothed with official authority. In 6 *H. & J.*, 150, *Jackson vs. Union Bank*, this court suppose, that a foreign merchant sends goods to his consignee in Baltimore, with instructions to dispose of them for him to the best advantage; the consignee sends them to auction, the auctioneer makes way with the goods, or sells them and makes way with the money, and fails, in such case it is declared, the consignee would not be responsible; and the court therefore adjudge, that if a bill drawn on Washington is deposited with a bank in Baltimore for collection, and is by that bank remitted to a bank at Washington—its usual agent—to be collected, this last bank becomes the agent of the holder, and its defaults are not to be visited

against the bank in Baltimore. 23 *Pick.*, 330, *Fabens vs. The Mercantile Bank.* 1 *Cush.*, 177, *Dorchester Bank vs. New England Bank.* 12 *Conn.*, 303, *East-Haddam Bank vs. Scovil*, amongst others, may be cited to the same effect.

A different rule would seem to prevail in New York. In 22 *Wend.*, 215, *Allen vs. Merchants Bank*, it was held, that the bank to which the note was remitted for collection was the agent of the bank with which the note was deposited by the holder, and the latter bank was liable to the holder for the defaults of its agent. This is the leading case on the subject in New York, and was decided in the Court of Errors by a vote of fourteen to ten, reversing the judgment of the Supreme Court. The ground of the New York rule is stated, in 223, to be, that the acceptance of negotiable paper thus deposited for collection forms an implied undertaking to make the demand, and give the notice required by law or mercantile usage, for the perfect protection of the holder's rights against all previous parties—for which undertaking the use of the funds thus temporarily obtained, or of the average balances thereof for the purposes of discount or exchange, forms a valuable consideration. Now it will be observed, that the liability of the bank is thus rested on contract implied by law, from the fact that the depositary is a bank of discount and deposit, ordinarily using the funds of its customers in the transaction of its own business. The profit which is derived from the employment of the aggregate balances to the credit of its customers, is the consideration upon which the law will imply a special contract with the wayfarer who accidentally deposits a bill for collection, to indemnify him against the defaults of the agents who may be employed in the collection of that bill. Conceding that the guarantee ought to be sustained against the defaults of the clerks of the bank or other agents, voluntarily selected to assist in the discharge of its agency, there would yet remain a difficulty in extending it to the default of a public officer to whom the note was entrusted, for the purpose of authenticating the facts which fix the responsibility of the indorsers, and of thereby facilitating the recovery of the claim by the holders against them. There was no proof offered of usage or commercial

understanding, that the banks should assume any unusual responsibility for agents, whose appointment should be rendered necessary by usage or the exigency of business, much less that they should assume the obligation of giving notice of dishonor to all the parties to the instrument. In England it is certain, that the banker is bound to give notice of dishonor only to the holder by whom the bill was deposited for collection, (3 *Bos. & Pul.,* 599, *Haynes vs. Birks,)* and the inference is very fair, that the courts at Westminster would ignore the existence of the other branch of the supposed implied contract. If the use of the average balances in hand is a consideration for the contract, to be implied that the banker shall guarantee his customers against the negligence of the agents necessarily employed by the agent, why should not the law, in the case supposed in *Jackson vs. Union Bank,* imply a contract or undertaking, on the part of the consignee, to indemnify his principal against the frauds of the auctioneer employed to sell the goods consigned?

The ground assumed in New York is *petitio principii,* assumed in the absence of evidence, sustained by no authority, and warranted by no principle. But it will be sufficient to conclude the argument by suggesting, that the decision, and the reasoning on which it is rested, are directly at variance with the point adjudged and the reasoning adopted by this court in *Jackson vs. Union Bank.*

The instruction given by the court below assumes there was evidence of a special contract on the part of the bank to do all that was necessary to fix the responsibility of all prior parties to the plaintiffs. But there was no evidence of any such special contract. The extent of the obligation of the bank was determinable by the general law. The court ought to have stated what were the obligations which this general law casts on the bank, and ought not to have left it to the jury to find what were the obligations of the contract which this law implied from the relation of depositor and depositary existing between the parties. In this particular the jury were required to find matter of law.

But in the next place, the court based the second branch of its instructions upon the facts enumerated in the first branch

thereof, and amongst others, upon the fact that the plaintiffs had misdirected the notary as to the actual residence of the indorser. The effect of the instruction then was, that if the jury should, from the relation of depositor and depositary, imply a contract on the part of the bank to do all that was necessary to fix the liability of the indorser, and that the bank had not given due notice to the indorser, then the plaintiffs were entitled to recover, although they should find that the plaintiffs had misdirected the notary as to the actual residence of the indorser, and that the failure to give proper notice to the indorser was the necessary consequence of such misdirection. In this, as before stated, the jury were charged to find what were the legal consequences resulting from the relation of depositor and depositary. And the contract supposed, being implied as matter of law, the court instruct the jury, that the defendant cannot excuse the non-performance of the contract, by showing that this default was caused by the false information given to the notary by the plaintiffs. This would be hard law indeed, unless it can be shown that the notary is bound, at his peril, to find out the places of residence of the indorsers. We have already stated, that these instructions involve the reverse of the propositions submitted by the appellant.

*Charles W. Ridgely* and *St. Geo. W. Teackle* for the appellees:

The greater portion of the argument on the other side is bestowed upon the discussion of the prayers of the appellant, all of which were rejected by the court; and if those prayers were open for argument in this court, we apprehend that it would be an easy task for us to show that each and all of them were properly rejected. But as no exception was reserved to the rejection of either of those prayers in the court below, we deem it unnecessary, and a useless consumption of the time of this court, to discuss either of those prayers, and will proceed at once to discuss the true and only questions open upon this appeal, in the order in which they are presented in the record.

The first question arises upon the first branch of the instruc-

tion of the court. Now it will be seen from an examination of this portion of the instruction, that the only proposition of law decided in it is, that if the maker and indorser of a promissory note both reside in the same city, and the note at its maturity is not paid, and the indorser had no notice of the non-payment of the note on the day of its maturity or on the next day thereafter, and no notice of non-payment was left at the residence or place of business of said indorser, that then the said indorser is not responsible for the payment of said note, by reason of his said indorsement, notwithstanding any misdirection given to the notary by the plaintiffs or other persons as to the actual residence of said indorser, unless upon proper and reasonable diligence it was not in the power of the notary to have procured more correct information as to such residence or place of business. Now can any proposition of law be clearer than that announced in this instruction? The point decided is simply that if the jury find the facts stated in the instruction, that then the indorser *is discharged from his liability as indorser.* It does not follow from the instruction, as is erroneously supposed in the argument on the other side, that therefore the plaintiffs are entitled to recover as against the defendant, for it might well be, that if the failure of the notary to find the indorser or his residence or place of business resulted *from the misdirection of the plaintiffs,* that the notary, or the bank, whose agent he was, should not be held responsible for such failure to notify such indorser.

We deem the above sufficient upon this question and proceed to the consideration of the next question which arises upon the second branch of the court's instruction. The question here presented is simply this: *whose agent was the notary for the purposes of demand and notice?* Upon the facts stated in this instruction, *was he the agent of the bank or the agent of the plaintiffs?* Two important facts bearing upon this question are free from all doubt:—1st. That the bank received the note in question from the plaintiffs for collection, *and undertook to collect it,* or have it collected; and 2nd. That the bank, without consultation with, or notice to the plaintiffs, *employed the notary in this case to take the necessary steps to*

*secure the collection of the note,* and also employed him as general agent in similar cases. Now upon general principles it seems clear, that the person employed as an agent, is the agent of the person who so employs him, unless specially employed as the agent of another, under a sufficient power for that purpose. And the privity being between the agent and the person employing him, the principal ought to be, and is ordinarily, responsible to third parties for the acts of such agent. This, as a general rule, is conceded in the argument of the appellant's counsel, but they contend that a notary public, being an *official* character, forms an exception to this general rule of law. Now it is unquestionable law, that no protest of an inland bill or promissory note is necessary to bind an indorser—demand and notice are alone sufficient for that purpose, and the notary in this case could have done every thing necessary to bind the indorser, *in his individual capacity as Lemuel Duvall,* as well as in his *official capacity as Lemuel Duvall, notary public.* And the usage proved in this case is not to protest all or any inland bills or notes, but simply to place them, if not paid at maturity, into the hands of a notary, for what purpose the evidence does not state. But, say the learned counsel for the appellants, the bank was bound to have this note protested, in order to secure to the holder the advantage of the *prima facie* proof afforded by a protest under the act of 1837, and if it had failed in this duty which it had undertaken, it would have been liable to the plaintiffs. This argument of our opponents we deem conclusive upon this question: for, we ask, how could the bank be held liable for not securing to the appellees in this case the *prima facie* evidence of a protest to facilitate the plaintiff's recovery upon the note, as against this indorser, and not be held liable to the appellees for not giving notice of demand and non-payment to the indorser, without which all the protest and other evidence would be entirely inefficacious towards the recovery of the amount of the note as against such indorser? There was but one undertaking of the bank, and that was a general one, *viz:* to collect the note, or rather to take the necessary means to do so. And amongst these means, notice of demand and non-

payment to the indorser is the most necessary and imperative. We deem it only necessary, in support of the foregoing views, to refer the court to the following authorities: *Allen vs. Merchants Bank*, 22 *Wend.*, 215. *Smedes vs. Bank of Utica*, 20 *Johns.*, 371. *Thompson vs. Bank of S. Carolina*, 3 *Hill S. C. Rep.*, 77. *Bank of Utica vs. McKinster*, 11 *Wend.*, 473. *Fabens vs. The Mercantile Bank*, 23 *Pick.*, 330. *The Bank of Utica vs. Smedes, &c.*, 3 *Cowen*, 662.

Now it is not questioned in either of these cases that the notary is the agent of the bank in which the note is deposited for collection, *where the bank is located in the place where the note is payable, and where the parties responsible on the note reside.* Even the chancellor and his nine compeers, in the case in 22 *Wendell*, admit that, but they put their dissenting opinion solely upon the ground, in that case, that the note was payable in another city, and necessarily required the intervention of other agents in such other city, and that such necessity was known to the depositor, and he was to be presumed to acquiesce in the employment of some one *as his agent* other than the bank in which he deposited the note. The opinion of the majority of the court allows no such distinction, but holds the bank that first receives the note for collection liable as agent to the depositor for all negligence, whether of its officers or of other banks or persons employed by them wherever located or residing. It is not necessary for us to go to the extent ruled in this case;—in the case now before this court the bank, the holders of the note, and all the parties responsible upon it, lived in the city of Baltimore. Before leaving this branch of the case, we beg leave to say that all the cases cited by our opponents upon this point will, upon examination, be found to harmonize with the view we have above expressed, if they are examined with reference to the distinction above taken between banks or agents located or residing in the place where the note is payable and the parties responsible upon it reside, and where they are not so located.

In conclusion, we submit that there is no foundation for the objections started by our opponents, either that any question of law has been put by the court to the jury in this case, or

that any question of facts has been taken from them—this error arises from the counsel of the appellants blending the facts and principles of law stated in their prayers to the court, with the court's instructions—the rejection of those prayers not having been excepted to below, every thing in them is outside of this case.

ECCLESTON, J., delivered the opinion of this court.

The counsel for the appellant insist, that the record presents for our consideration, not only the inquiry whether the court was right in the instructions given to the jury, but also, whether there was not error in refusing to grant the prayers of the appellant; whilst the appellees contend that no exception was taken to the rejection of the prayers but only to the instructions by the court. We are inclined to think the latter is the correct view, but the point need not be decided, because, confining ourselves to the instructions, we find such error in them as to require a reversal of the judgment.

The following is the language of the court: "If the jury believe from the evidence in the cause, that the note offered in evidence was drawn by Wesley F. Walter and indorsed by Edmond T. H. Walter, and that the said indorser and drawer both resided in the city of Baltimore at the time of maturity, and that the note was held by the bank at said time, in said city, for collection on account of the plaintiffs, and shall believe they were then and still are the owners of the same; and if they shall further believe that the said note was not paid at maturity, and that said indorser had no notice of the non-payment thereof, on the day of its maturity or the next day thereafter, and that no notice thereof was left by the plaintiffs or their agent at the residence or place of business of said indorser, then the indorser is not responsible for the payment of said note by reason of his indorsement, although they should believe that the plaintiffs, or their agent duly authorized thereto, as well as other persons in the city of Baltimore, misdirected the notary as to the actual residence of the said indorser, unless they should believe, that upon proper and reasonable diligence it was not in the power of the notary to have pro-

cured better and correct information as to the residence or place of business of the said indorser.

"If the jury believe the facts stated above as to said note, that the contract and undertaking of the bank with the plaintiffs is to be found by the jury from all the evidence in the cause; and if they shall find from such evidence that the bank undertook, on receiving this note for collection, only to employ a competent and proper person to demand payment of said note at maturity, and give the proper notices of its nonpayment, and that they did employ such competent and proper person, and placed the note in his hands in time to have said demand made on the day of the maturity of the note, and such notices given, then the bank is not responsible, although they should believe, that by the negligence or other fault of such person so employed, the note has become lost to the said plaintiffs. But if the jury should believe from the evidence in the cause, that the undertaking of the bank in their receiving said note for collection was, that they would do all that was proper and necessary to be done by the plaintiffs themselves, in order to the security of the interests of the plaintiffs, so far forth as the responsibility of the drawer and indorser was concerned, then the defendant is answerable to the plaintiffs for whatever loss they may find the plaintiffs to have incurred by reason of such negligence, and insufficient action of the bank or the person employed by it as aforesaid."

In the latter part of the opinion and direction thus given by the court, the jury are told, if they believe from the evidence, that in receiving the note for collection the bank undertook to do all that was proper and necessary to be done by the plaintiffs themselves, in order to secure the interests of the plaintiffs so far as the responsibility of the drawer and indorser was concerned, then the bank is answerable to the plaintiffs for any loss they had incurred by reason of negligence and insufficient action of the bank or the person employed by it. "The person employed," here spoken of, means, of course, the notary. But we see no evidence tending to prove any undertaking or agreement whatever, on the part of the bank, which can render it responsible to the plaintiffs for the alleged negligence

of the notary, or for his insufficient action in the premises, and for want of proof to sustain such responsibility we think there was error in giving the instruction.

The act of 1837, ch. 253, makes protests of inland bills of exchange and promissory notes *prima facie* evidence; and for the purpose of securing the benefit of this law to the owners of such instruments, it is the duty of the banks receiving them for collection to place them in the hands of a notary that they may be protested in due time, when necessary. And we think, that in this State, when, in the ordinary course of business, without any special agreement on the subject, a note or bill is received by a bank for collection, which is in due time delivered by it to the notary usually employed in such matters by the bank, so that the necessary demand, protest and notices may be made and given by him, the bank will not be answerable in case of loss resulting from a failure of the notary to perform his duty.

The responsibility of banks receiving notes for collection, where they have employed other banks or agents, has been carried further in New York than in some other States of the Union. But even there, in *Smedes vs. Utica Bank*, 20 *Johns. Rep.*, 384, where the bank was held answerable on account of having employed a person to make demand and give the notice, who was not a competent agent, the court say: "If the note had been delivered to a notary it would present a different case. Notaries are officers appointed by the State; confidence is placed in them by the government. This may be evidence sufficient to justify an agent in committing to them business relating to their offices, although in point of fact it might subsequently appear, they did not possess the necessary qualifications." See also *Story on Agency*, sec. 201. *Pawson vs. Donnell*, 1 *G. & J.*, 147. *Jackson vs. Union Bank*, 6 *H. & J.*, 150. *Fabens vs. The Mercantile Bank*, 23 *Pick.*, 330. *Dorchester Bank vs. New England Bank*, 1 *Cush.*, 177, 188. *East Haddam Bank vs. Scovil*, 12 *Conn.*, 303. *Bellemire vs. Bank of the United States*. 4 *Wharton*, 105, and 1 *Miles*, 173. *Baldwin vs. Bank of Louisiana*, 1 *Louisiana Annual Rep.*, 13. *Hyde & Goodrich vs. Planters*

*Bank of Miss.,* 17 *Louisiana, Rep.,* 560.     *Tiernan & others,*
*vs. Commercial Bank of Natchez,* 7 *How. Miss. Rep.,* 648.
*Angel & Ames on Corp.,* 186.
                    *Judgment reversed and procedendo ordered.*