# SUPERIOR COURT OF BALTIMORE CITY.

Filed September 14, 1925.

PIETRO VIDI

VS.

THEODORE H. DIENER, TRADING AS THEO. H. DIENER AND COMPANY.

*John B. Deming* for plaintiff.
*Robert W. Beach* for defendant.

STEIN, J.—

This is a suit to recover eleven hundred and seventy dollars, with interest from December 10, 1921; paid by the plaintiff for the defendant's undertaking to remit "By Cable," twenty-six thousand lira, Italian currency, to the plaintiff's father, Bartola Vidi, at Pinzola, Trentino, Italy.

The suit contains four common counts, and a special count, setting out in some detail the above-named cause of action.

The case shows: that the plaintiff is a scissor grinder, born in Pinzola, then part of Austria, now part of Italy; who came to this country on March 25, 1921; apparently arriving in Baltimore, where he has lived ever since; and in which the defendant, under the name of Theodore H. Diener & Company, for many years last past has carried on the business of steamship passenger agents and remitters of foreign money. On December 10th, 1921, the plaintiff went to the defendant's place of business in this city and paid him $1,170 and $4.18 for cable for sending 26,000 lira, Italian currency, to the plaintiff's father, Bartola Vidi, at Pinzola, Trentino, Italy.

The plaintiff who dealt with Karl Metzler, defendant's clerk, testified to the transaction, as follows:

"I am go in his (Diener's) office, and ask him (Metzler) if he can't send me that much money to Italy in the part of Pinzola by cable, and he say yes, and I ask him if my money—I am asking him if he can send that much money to Pinzola, Italy; and he say yes, and I ask him if my money is sure when it left here in this office and he say yes. He say he don't pay my money in Pinzola, have my money back here, and I ask him for sure, and he say yes.

\*   \*   \*   \*   \*

"And I say how many dollars you want for twenty-six thousand lira: and he ask me $1,170, and extra, he says you got to pay four dollars and a few cents for a cable; *because I want to send it over by cable,* and I say how long it take that money before it be over there in Pinzola, before it be put in Pinzola, that money, and he say two or three days—four is the most, and I say all right and I left my

money and he gave me the receipt and I don't get it yet."

The Defendant's testimony shows that cable cost $4.18; that the $1,170 paid for buying the lira, including all expenses. As part of the record, counsel agreed that Karl Metzler, if called to testify, would deny he told the plaintiff that his money would certainly be paid to Bartola Vidi in Pinzola, and that if not so paid the plaintiff would be reimbursed by the defendant.

The receipt referred to in the testimony is as follows:

Number
1719                    . Date Dec. 10, '21.

To Bartola Vidi fir

Receipt for Giovanni Morasthin

| Remittance of | Amount, $1,170 |
| Lira 26,000 | Cable, 4.18 |

$1,174.18

THEODORE H. DIENER & CO.,
By K. METZLER.

Theo. H. Diener & Co.,
Diener Building,
217 East Baltimore St.,
Baltimore, Md.

(By Cable)

PINZOLA, TRENTINO, ITALY,
Account, T. VIDI,
204 S. Lloyd St.

| Steamship Tickets | Notary Public |
| Foreign Money | Travelers' Checks |

On the day he received the money the defendant cabled its correspondent at Naples. The Banca Italiano Di Sconto, Naples, to transfer by telegraph 26,-000 lira to Bartola Vidi, Fu Moraschin, Pinzola, Trentino.

The testimony of (Bartolo Vidi) the father (taken under a commission, exceptions to which were filed and thereafter waived) shows, he received two written notices from the Banca Italiano Di Sconto, Trentino, one dated December 15, 1921; the other dated December 22, 1921; that dated December 15, 1921, is that:

"By order of *our Naples office* and *for their account* we hold at your disposition an amount of 26,000 lira, *which amount you can withdraw from our cashier's counter* against presentation of the regular documents visaed by the competent authority recognized at our counter."

The notice of December 22, 1921, was substantially as follows:

"In reply to your letter of the 20th inst., we have the pleasure of handing you enclosed receipt No. 5279/1 and 2, for L. 26,000, asking you to affix your signature to this and then have it legalized by the Mayor, or other competent authority.

"Awaiting the receipt signed by you and legalized as indicated above, we are, &c."

The father testified, he also received a draft and a duplicate, for the amount of 26,000 lira, each of which he then had; that the remittance of 26,000 lira was from Theodore H. Diener & Company, through the Banca Italiano Di Sconto at Naples; that he sent the original draft through the Banca Cattolica di Trento to the Banca Italiano di Sconto to be cashed, but the latter had stopped payments and consequently the draft was returned to him unpaid. The defendant's testimony shows that this bank was one of three or four large banks in Naples, and until its failure "enjoyed good credit until two days before its failure. But up to the time of the failure there was nothing known that there was anything the matter with the bank. The bank was enjoying good credit.

Upon this record the plaintiff contends:

1. That the contract between the plaintiff and defendant was made up of the receipt above-named and Metzler's oral statement "that the money if not received by the father would be returned to the plaintiff."

2. That the defendant legally is responsible for loss occasioned by the failure of the bank at Naples, not only because such failure prevented the payment of the money to the father, but because the contract to transmit the money by cable to Bartola Vidi, Pinzola, Trentino was not gratified by the cable to the Naples bank, and the wire of that bank to its branch at Trentino.

The defendant contends:

1. That, the receipt is the entire contract between the parties, and that his exceptions to Metzler's above-named oral statement should be sustained.

2. That, the defendant's duty was to remit the money to Bartola Vidi; that

in so doing must use sub-agents; in selecting which the law required him only to use due care; that having used such care, he is not responsible to the plaintiff for loss growing out of the default of any of them.

3. That, defendant's duty to transmit the money by cable was gratified by the cable to the Naples bank.

4. That, on December 15, 1921, five days after the plaintiff's contract with the defendant, of which days one, December 11th, was Sunday, the lira were at Trentino ready to be paid over the counter in cash to the father; who had ample time to get the lira before the bank at Naples stopped payment, which did not occur until after December 29th, more than two weeks after the notice; so that the defendant is not responsible for any loss arising out of either the father's delay in collecting the lira or in the non-payment thereof because of the bank's failure.

The prayers present these different contentions, which counsel have supported ably by their briefs.

I.

I rule as a matter of law, that the contract between the parties includes the receipt, and Metzler's above-named oral statement. Will overrule the defendant's exception thereto.

The receipt was the defendant's agreement that for the sum of $1,170, then paid and $4.18 for cost of cable, he would remit 26,000 lira by cable to Bartola Vidi at Pinzola, Trentino; the oral testimony added another clause not covered by the receipt; i. e. that the money was to be returned to the plaintiff if not delivered to Bartola Vidi at Trentino.

II.

The duty to remit by cable was gratified by the defendant's cable to his correspondent bank at Naples "to transfer the 26,000 lira to Bartola at Pinzola, Trentino."

The next question is, whether or not the defendant was responsible to the plaintiff for the default of the bank at Naples.

The cases on this question are in sharp conflict; under some:

1. The defendant would be responsible only for due care in selecting its agents to carry out the remittance, and

is not responsible for any default of negligence of sub-agents so selected.

This is the Massachusetts rule.

Under others:

2. The defendant would be responsible for all acts of his sub-agents, even when selected with due care.

This is the New York rule.

These rules are discussed in 19 L. R. A. 263 to 266; McGee on Bank and Banking 3rd Edition, 504 Note 25b—19 C. J., Sec. 262—263. pp. 606-607, and Patton's Legal Opinions, No. 1099, page 245, from which it appears that the courts of eighteen and the Legislatures of three States, twenty-one in all, follow the Massachusetts rule; and that courts of ten States follow the New York rule—the United States Supreme Court in Exchange National Bank vs. Third Natl. Bank, 112 U. S. 276 followed the New York rule.

Maryland applied the Massachusetts rule in:

Jackson vs. The Union Bank 6 H. & J. 146 at 150.

Citizens Bank vs. Howell, 8 Md. 530 at 547.

So that, I rule that the defendant is not liable to the plaintiff for the default of its correspondent bank.

III.

I think relevant; (a) the testimony tending to show the defendant had 26,000 lira on deposit at Naples; (this is cumulative — the father's testimony shows that the Naples bank sent 26,000 lira at its branch at Trentino to be paid to him over the counter); (b) the question asked Mr. Diener, "as to what reply, if any, he received from the bank at Naples in answer to the telegram of December 10th" — all of this, while excluded, should have been allowed.

I do not find as a fact, that the contract for remitting the lira included the term; that if Bartola Vidi did not receive them, the defendant would return them to the plaintiff; the Narr. does not set out this as part of the contract; Metzler, by whom it is alleged to have been made denies it, and is not such term as an ordinarily prudent man would make, who was then engaged in remitting money to Europe; and would have known of the then disturbed financial conditions in Italy and Austria.

I have granted the plaintiff's second and fifth;—refused, his first, third and

fourth prayers; overruled the defendant's motion to strike out Metzler's above-named oral statement—refused each of his prayers, and found a verdict for the defendant.