Moeptot, J.
delivered the opinion of the court.
The petitioners allege that they deposited with the defendants at Natchez, in the State of Mississippi, a promissory note for collection; that defendants undertook and bound themselves to use all care and diligence in collecting said note, and in case of non-payment to cause good and legal notice thereof [564] to be given to the indorser, Robert J. Walker. That at the maturity of said note, defendants caused the same to be placed in the hands of T. Red-man, a notary public, .residing at Natchez, and qualified according to law to demand payment thereof, and to notify in a legal manner the said indorser; that it was the duty of the said Redman not only to notify said Walker of the non-payment of the note, but also to make and keep a fair registry of all his official acts in the premises, and to state the manner in which said notice was forwarded; that said note was protested for non-payment by the said notary, who omitted to notify said Walker, and also to keep any register relating to such service, by which fault and negligence the said indorser was released from all liability; that on an action being brought by them against said Walker before the circuit court, in and for the county of Adams, in Mississippi, a verdict was rendered against them because no proof could be furnished that said indorser had been duly notified of the protest, and that no such proof existed in consequence of the fault and negligence of the notary, in omitting to make a full aud true record of the service of the notice, as required by law, whereby the petitioners aver that the defendants havo become responsible unto them for the amount of such note with interest, and the expenses of the suit against the indorser.
The general issue was pleaded. There was judgment below for plaintiffs, and the defendants appealed.
The plaintiffs introduced in evidence the record of the suit in which Walker was discharged. It clearly appears from the evidence as well as from their own averments that rheir failure to recover in that suit was entirely owing to the neglect and omission of the notary, Redman, to make a proper and sufficient record of the manner in which he had served notice on this *341 indorser; the notary having died befoi’e the trial, and his record being so deficient as to make no legal proof of such notice, the plaintiffs remained without any evidence whatever to establish this material fact, and a verdict was rendered against them.
The question is whether this neglect of duty on the part of the no- [565] tary is chargeable to the defendants; or whether the notary, being an independent sworn officer, acting under the authority of the State of Mississippi, was not, as such, the agent of the plaintiffs, as much as the defendant, and liable directly to thems ? The solution of this question, in our opinion, depends on the character of the acts he- omitted to do or performed in an illegal or inefficient manner. By reference to the . statute law of Mississippi, which has been given in evidence, it is provided “ that notaries public, not to exceed three in number in each county, shall be appointed and commissioned by the. governor upon the recommendation of the county court of the several counties; and that before entering upon the duties of their office they shall take and subscribe an oath, and shall give bond with two good and sufficient sureties in the penalty of §2000, conditioned for the faithful performance of the duties of their office; which bond shall be recorded with the clerk of the county court of the county where they reside, and may be sued on by any party or parties injured, in like manner and with like effect as bonds given by sheriffs and coroners for the faithful execution of their respective offices.” It is further provided, “ that when any notary public shall protest any promissory note, bill of exchange, or other instrument of writing, he shall make and certify on oath a full and true record of what shall have been done therein by him in relation thereto according to the facts by noting therein whether demand for the sum of money mentioned in the same was made, of whom, and where the requisite notice or notices were served and on whom, when the same were mailed (if such be the case), to whom and where directed, and every other fact in any manner touching the same, shall be distinctly and plainly set forth in his notarial record; and when so made out and certified it shall have the same validity, force and effect in all courts of record within the State as if the said notary were personally present and interrogated in open court,” &e. From these enactments it was clearly a part of the official duties of the notary to have kept a full and [566] fair record of the manner in which he had served the notice of protest on "Walker. The testimony shows that if this had been done, plaintiffs would have had no difficulty in recovering of the indorser; the notary had thus made himself and his sureties liable on his official bond to any person'injured by his neglect and failure to comply with this duty imposed upon him by law. Qan the defendants then be held responsible for his default ? We think not. They used that care, attention and diligence which men of common prudence bestow on their own affairs. They did for plaintiffs all that the latter would have done themselves had they returned the note in their possession. When the holder of a note wishes to possess evidence of the service of a notice on an indorser, he must of necessity substitute another person to perform the service; from the corporate character of defendants it was known that it could be performed by them in no other way than by substitution. In this *342 necessary selection, of a sub-agent, common prudence suggested to defendants the propriety of employing one not only competent in every respect to do the particular act of giving notice to the indorser, but whose official duty it was to make out a record, which in case of his death would preserve for plaintiffs, legal evidence of the service he had performed. But the notary, in making out the record required by law, neglected in this case to mention the place to which the notice of protest had been sent to the indorser, and the testimony shows, that he being dead at the time of the trial, no proof of such notice could be made, either by his record or otherwise. To make defendants responsible for this neglect of official duty on the part of the notary, would be rendering them the sureties of that officer ; it would be changing the ground upon which alone they can be held liable, to wit, that of negligence in the discharge of their duty to their principals. It is in evidence that T. Redman was the notary of defendants, and did all their business of the same descrip[567] tion. If, instead of employing him, defendants had given the notice to' one of their clerks, or any other individual however competent, and after performing the service, the latter had died, plaintiffs would have had just cause to complain that a course was pursued for them different from that which defendants had found proper and beneficial for themselves. But by acting as they did, it appears to us, that their undertaking was fully satisfied. If, by the fault or neglect of the notary they employed for plaintiffs, the latter have suffered any injury, they must look to the sureties on his official bond, because such fault or neglect was a breach of his official duties. Motillet v. Bank of the United States, 1 Martin, N. S. 368 ; Story on Agency, 189, sect. 201 ; La. Code, arts. 2977, 2978 ; Smedes v. Utica Bank, 20 Johnson, 377.
It is therefore ordered that the judgment of the district court he reversed, and that ours be for the defendants with costs in both courts.