*McFARLAND*
*vs.*
*RICHARDSON.*

---

## BALDWIN *v.* THE BANK OF LOUISIANA.

Where a bank in which a note has been deposited for collection, in case of non-payment, places it, for protest, in the hands of the notary to whom its own business is uniformly intrusted, it will not be responsible for the failure of the notary to protest the note, or to notify the proper parties. Having shown the same care and attention in the management of the business intrusted to it which men of common prudence bestow on their own affairs, it is not answerable for the neglect of the notary.

APPEAL from the District Court of the First District, *Buchanan*, J. *Hoffman*, for the appellant. The liability of the bank is established by a series of decisions. See *Durnford* v. *Patterson*, 7 Mart. 463. *Crawford* v. *Louisiana State Bank*, 1 Mart. N. S. 216. *Montilet* v. *Bank of the United States*, Ibid. 367. *Canonge* v. *Louisiana State Bank*, 7 Mart. N. S. 585. *Pritchard* v. *Louisiana State Bank*, 2 La. 416. *Miranda* v. *City Bank of New Orleans*, 6 La. 741. In *McCulloch* v. *The Commercial Bank*, the plaintiff failed for want of proof of any contract of agency between himself and defendant. The case of *Hyde* v. *The Planters' Bank* (17 La. 560), and that of *Frazier* v. *The Gas Bank* (2 Robinson, 295), turned upon the laws of Mississippi. The case of *Hum* v. *The Union Bank*, was put upon the ground that the employment of a sub-agent was an act of necessity.

*L. Peirce*, for the defendant.

The judgment of the court was pronounced by

SLIDELL, J. The plaintiff seeks to make the defendants, an incorporated bank, liable to him for the sum of $533 21, with interest and damages, upon the ground that he deposited with the defendants, for collection, a promissory note, drawn by *Davis*, and endorsed by *Harper*. That it had long been the usage of banks in New Orleans to cause notes so deposited to be protested, in case of non-payment by a notary public, and to give notice to endorsers. That the bank, at the maturity of the note, placed it in the hands of their agent, *William Christy*, a notary public, to make the usual demand and protest, and to give the usual notice to the endorser. That *Christy* undertook accordingly to give said notice of protest; but did not serve upon, or deliver such notice of protest to said *Harper*, in the manner required by law. That he has obtained judgment against the maker, and issued execution unsuccessfully against him, and that the maker is insolvent.

That he has brought suit against *Harper* also; but that judgment has been rendered in *Harper's* favor, on the ground that he was *not duly notified of the* maker's default.

The court below gave judgment in favor of the bank, and the plaintiff appealed.

The counsel for the defendants has addressed to us arguments on several points of law and fact, which we do not consider it necessary to examine. We will assume, for the purpose of the present inquiry, that *Harper* did not receive legal notice, that the plaintiff has expended, in an unavailing suit against him, the amount alleged in his petition, and that the maker of the note is utterly insolvent.

The bank having undertaken for its depositor the collection of the note, became thereby bound to have every thing done according to the laws of the State, that should be necessary, in case of non-payment, to fix the full liability of the drawer and endorser. In ascertaining whether this duty has been, in legal contemplation, sufficiently performed, we shall inquire—

1. Whom was it the duty of the bank to employ to demand payment, make protest, and give notice of protest of this note?

2. How far is the bank liable for the negligence of the person thus employed?

I. Our laws provide for the appointment by the chief magistrate of certain public officers, called notaries public. These officers keep public records of their official acts. These records are clothed by the law with such solemnity, that the originals or certified copies are received in our courts as authentic evidence.

Our laws clothe these officers with the authority to make demand and protest of bills of exchange and promissory notes; and declare also, that all notaries, or persons acting as such, are authorized "in their protests of bills of exchange, promissory notes, or orders for the payment of money, to make mention of the demand made upon the drawer, acceptor, or person on whom such note or bill of exchange is drawn or given, and of the manner and circumstances of such demand, and, by certificate added to such protest, to state the manner in which any notices of protest to drawers, endorsers, or other persons interested, were served or forwarded; and whenever they shall have so done, a certified copy of such protest and certificate shall be evidence of all the *matters therein stated.*" And by another statute it is declared that "the bearers of bills of exchange and promissory notes, payable in this State, and subscribed after the passage of the statute, shall be entitled to an interest on the amount of said bills or notes from the day they were regularly protested for non-payment." Act of 1821.

It thus appears, that an agent who entrusts to a notary public the duty of protesting and giving notice of protest, selects a public officer, who acts under the solemnity of an oath, and the authority of the executive commission and the laws of the land; whose official character implies a certain degree of skill and experience; whose protest fixes instantly and certainly the liability for interest; whose official records of the protest and notice remain though he should depart, survive not only his recollection but his life, and stand in perpetual remembrance of his official acts.

Under such circumstances it cannot be doubted what course a prudent and faithful agent should pursue. Knowing the law and the advantage which an observance of the law gives to the holder of a note thus protested and notified, it is the agent's duty to employ a notary public.

This duty the defendants fulfilled; for the petition and testimony both show that the note was placed, on the day of its maturity, in the hands of *William*

*Christy*, a notary public, being the same officer to whom the bank uniformly entrusted its own business.

II. How far is the bank liable for the negligence of the person thus employed?

In the language of the former Supreme Court, in the *Planters' Bank* case, the defendants have exhibited that care, attention and diligence which men of common prudence bestow on their own affairs; they have done for the plaintiff all that he would have done for himself, had he been present here, and retained the note, till its maturity, in his own possession. The daily and necessarily important transactions arising from the use of its own large capital, receive, in this particular, the same care and attention which the plaintiffs claim has received, and no more. Greater diligence and greater prudence than is here exhibited, it would be unreasonable and unjust to require.

The decision of this case rests on a familiar doctrine of the law of agency. In many cases of agency, says Judge Story, it becomes necessary and is usual for the agent to employ a sub-agent, as, for example, a broker, to transact the business. In such a case, the agent will not ordinarily be responsible for the negligence or misconduct of the sub-agent, if he has used reasonable diligence in his choice as to the skill and ability of the agent. But the sub-agent will, in such cases, be responsible to the principal for his own negligence or misconduct. Story on Agency, p. 190.

This doctrine fully applies to the case before us, for we have already shown that it was the duty of the bank to employ a notary. Moreover, a doctrine which is sound in the case of an ordinary individual, seems to apply with peculiar emphasis to the case of a corporation, an artificial being, which must necessarily act by substitution.

In further illustration of the rights and relations of the parties, let us present a single analogous case. Let us suppose that the note in question had been so protested, and the notice to *Harper* so given, as undeniably to fix his liability. That, thereafter, *Baldwin* should address, from his residence in New Jersey, a letter to the bank, requesting it to proceed by suit to collect the note; that, in the execution of this mandate, and it being necessary to employ an attorney at law, the bank should hand the note for suit to a sworn attorney at law, of long standing and experience at the bar, and enjoying a good character as to diligence, integrity and professional skill; that the attorney should accordingly institute suit, but that by his mismanagement and negligence, the suit should fail, an undoubted opportunity of collecting the note be lost, and the endorser soon after die in utter insolvency. The analogy with the case before us, seems to us complete; yet, in such a case, neither in reason nor on authority, would the bank be responsible for the attorney's fault. The bank might well say that, it had pursued the necessary course of business in such cases, and had done for its correspondent precisely what he would have done for himself, if present. See Paley on Agency. 18 Law Library, pp. 9, 45. Livermore on Agency, vol. 1, p. 354. Also, 1 Miles, 173.

We consider ourselves as reiterating, in this case, the decision of the former Supreme Court, in the case of *Hyde & Goodrich* v. *The Planters' Bank* (17 La. 566), and in the case of *Frazier* v. *The Gas Bank*, 2 Robinson, 296.

The plaintiff attempts to distinguish the present from those cases, because there the agency was governed by the law of Mississippi; and he urges that in that State a notary gives a bond to the State, which is available to any party injured. It is true that this provision of the law of that State was adverted to in the *Planters' Bank* case; but after a careful perusal of the opinion of the

BALDWIN
v.
BANK OF LOUISIANA.

court, we do not consider it as put upon that narrow ground, nor that the circumstance of the official bond was an essential element in the decision.

It is also argued that the defendants have exhibited their own conviction of their responsibility by taking a bond from *Christy*, with sureties for the faithful performance of his duties, conditioned also to save the bank harmless, from or on account of any negligence or misconduct of him, the said *Christy*, etc. The duties of a notary of a bank are multifarious, and the taking of a bond is a salutary precaution; but certainly a contract of this sort between *Christy* and the bank has no connection with the contract of deposit between the plaintiff and defendants, and cannot diminish nor enlarge the obligations arising from it.

It is said that if we affirm the judgment in favor of the defendants, we, in doing so, overrule numerous decisions of the former Supreme Court. In our opinion the cases referred to were substantially overruled in the case of *Hyde & Goodrich*, already cited.

*Judgment affirmed.*