MOUNT v. THE FIRST NATIONAL BANK OF MOUNT PLEASANT.

1. **Promissory note:** LIABILITY OF BANK FOR FAILURE TO PROPERLY PROTEST. Where a bank receives from the holder and specially undertakes to protest a note for the purpose of charging the indorser, it is the duty of the officers of the bank to exercise ordinary and reasonable diligence in discharge of the duty intrusted to them. If this be done, the bank will not be liable for damages resulting from failure to give notice to the proper party.

2. —— As to whether the bank officers have been guilty of negligence in the premises is a question of fact for the jury.

3. —— RULE APPLIED. A bank received for protest a note indorsed by John Becker. The bank officers knew a person of that name, a man of property, who lived in that vicinity at a post town some three miles distant, who was the only person they knew of that name, and who they supposed was the person who indorsed the note. They gave him notice of non-payment through the mail. It turned out that the indorser was another person of the same name, living in a different county. The indorser being released by the failure to give notice, the holder brought action against the bank for damages sustained through its alleged negligence. A verdict was returned for the defendant, which the court, on appeal, refused to disturb.

*Appeal from the Henry Circuit Court.*

WEDNESDAY, DECEMBER 3.

ACTION for the recovery from defendant of losses sustained by the alleged failure of defendant to give proper notice to an indorser of the failure of the maker to pay a note of $650, executed by D. A. Kettle, dated Mount Pleasant, Iowa, November 17, 1868, payable to John Becker, or order, at Mount Pleasant, Iowa, on or before January 1, 1871, and indorsed by John Becker to the plaintiff.

Trial by the court. Judgment for defendant. Plaintiff appeals.

*Halls & Baldwin* for the appellant.

*Amblers & Babb* for the appellee.

DAY, J. — When there was one year's interest due on the note in question, the plaintiff sent it to the First National Bank at Mount Pleasant to have the interest collected. This was done, and plaintiff received the interest from the bank by a check. A few months before the note fell due, plaintiff went to the bank and gave the officers special directions to have the note protested, as he wanted to hold the indorser on the note. John W. Martin, cashier of the bank, promised that it should be attended to.

On the 4th day of January, 1871, being the last day of grace, Martin, the cashier, handed the note to T. J. Van Hon, teller in the bank, who was also a notary public, and directed him to protest the same, which he did in regular manner, and on the same day deposited in the post-office at Mount Pleasant a notice of the protest for John Becker, who resided about three miles east of Mount Pleasant, which was his post-office address, and who kept a cash account in the bank. He was the only John Becker known to the notary, or to the officers of the bank, and Martin, the cashier, and Saunders, the president, directed the notary to give notice of the protest

to him. A few days afterward John Becker returned the note, and said there must be some mistake; that he knew of no note on which he was indorser. On the 5th day of January, 1871, the day after the protest, the cashier of the bank remitted the note, with the protest, to the plaintiff, who lived in the neighborhood of Brighton. The John Becker who was the payee of the note, and who indorsed the same, resided, at the time the note was executed, in Marshall. Afterward he removed to Merrimack, twelve or thirteen miles distant, where he owned a farm. He was a practicing physician.

When plaintiff bought the note, John Becker, the payee and indorser, lived in Merrimack; and when the note was protested he lived at Brighton, in Washington county. The signature of the John Becker living near Mount Pleasant is different from the signature of the indorser of the note.

The John Becker in Henry county was a business man and a man of means.

When John Becker returned the notice of protest, he said he had received letters in his box which did not belong to him, and he supposed there must be another John Becker up north.

Thereupon the teller, Van Hon, took the notice and mailed it, addressed to John Becker, at Marshall. The plaintiff sued the indorser and failed to recover, and Kettle, the maker, is insolvent.

The foregoing contains the substance of the facts established.

The question discussed in the argument, and upon which there is some conflict in the authorities, namely, as to the duties of bankers and others undertaking the collection of paper as a business, to give notice of dishonor to all parties liable to be charged on the instrument, in such manner and time as to charge them with their proper liability (See Shearman & Redfield on Negligence, § 240, and cases cited), does not necessarily arise in this case, for it appears from the evidence that the bank specially undertook to protest this note for the purpose of charging the indorser.

This protest includes notice to the indorser, and seems to

have been so understood by the bank from the effort made to notify him.

Nor does the case involve the necessity of considering the further question discussed, and also not free from difficulty, as to how far a banker is liable for the neglect or misconduct of a notary public to whom he has given his principal's note or bill for protest. See Shearman & Redfield on Negligence, § 243, and cases cited.

The note in question needed no notarial protest in order to charge the indorser. All that was needed for that purpose was due demand of the maker, and timely notice of non-payment to the indorser. And this could be done by the teller or cashier of the bank as well as by a notary.

In fact, the notary employed in this case was the teller of the bank, and he acted under the direct supervision and control of the cashier and the president, who directed him to notify the John Becker upon whom the notice of protest was served. Van Hon must, therefore, under these circumstances, be regarded as the agent of the bank, and the whole question resolves itself into one as to his negligence, and that of the other officers of the bank intrusted with the duty of giving such notice as would charge the indorser.

It was their duty to exercise ordinary and reasonable diligence in the discharge of the duty intrusted to them. A failure to exercise this diligence would constitute negligence, and render the bank liable for the damages occasioned thereby.

Usually whether there was negligence or want of due care in a given case is a question of fact for the jury and the finding of the jury unless clearly unsupported by the evidence will not be disturbed by this court.

And the finding of a court upon a question of fact receives the same consideration as the verdict of a jury.

This case does not justify our interference upon the ground that the judgment of the court is not sufficiently supported by the evidence.

The note was dated at Mt. Pleasant, and payable at Mt. Pleasant to the order of John Becker.

A John Becker lived within three miles of Mt. Pleasant, who was a man of means and business, and who had a cash account at the bank. The officers of the bank knew no other person of the name.

Plaintiff had not informed them where the indorser resided, or what was his post-office address. Nothing therefore was more natural, than for them to suppose that John Becker whom they knew, and who was the only one of the name of whose existence they had knowledge, who lived in the vicinity where the note was dated, and where it was made payable, and whose business and means rendered it not unlikely that he should be the payee and indorser of such note, was the real indorser, and the party who should be notified.

And it is not very surprising, nor very strong evidence of negligence, that they did not, under the circumstances, seek out another John Becker in an adjoining county.

It is said that by due inquiry, and a comparison of the signature of the indorser with that of John Becker in Henry county, they could easily have ascertained that he was not the indorser.

But there was nothing in the circumstances of the case to stimulate this inquiry. There was nothing rendering a resort to such measures necessary to the exercise of ordinary care. The circumstances all pointed with reasonable certainty to the Henry county Becker as the right man. They knew of no other and had no reason to suppose there was any other. The name is not at all a usual one. If the name had been John Smith, and the note had been protested in New York city, the exercise of reasonable diligence might have required greater caution. It is said, however, that if they had paid out money on a forged check, and had not used greater diligence than was exercised in this case, the bank would have been liable again to pay the real owner. But the bank would have been so liable if the officers had paid out money of a depositor upon a forged check, whatever diligence was employed.

The cases, therefore, are not analogous.

We think the judgment of the court finds reasonable support from the evidence, and that it should be

Affirmed.

The chief justice concurred in the conclusion on the ground of the conflict of evidence, and that the finding of fact stands as the verdict of a jury.