Hon. Decius S. Wade, Chief Justice.
Hon. William J. Galbraith,  
Hon. James H. McLeary,  } Associate Justices.
Hon. Thos. C. Bach,

Power and another, appellants, *v.* First Nat. Bank of Fort Benton, respondent.

Banks and Banking — *Collections — Bank liable for agent's default.* Where a bank accepts a draft from a customer for collection, without any special contract as to its liability, and transmits it for collection to an agent, who collects it, and fails to account for the proceeds, the bank is liable to its customer for the amount collected on such draft.

*Appeal from Third District, Choteau County.*

H. G. McINTIRE, for the appellants.

BUCK & HUNT, for the respondent.

McLEARY, J.  This was an action brought by the appellants against respondent to recover the amount of a draft drawn by Kilburn on Ulm, and deposited by plaintiffs with defendant for collection, and alleged to have been collected and the proceeds retained by the defendant.  It was tried by the court on an agreed statement of facts, and judgment rendered therein for defendant, from which judgment the plaintiffs appeal to this court.

The agreed statement of facts, among other formal matters, contains the following: "That on the 17th day of September, A. D. 1884, the plaintiffs were the owners and holders of a certain draft for the sum of $325.57, drawn by J. M. Kilburn on William Ulm, at Sun River, Montana territory; that on said date the plaintiffs deposited said draft with defendant for collection; that plaintiffs were regular depositors with defendant; that on said 17th day of September, A. D. 1884, the defendant forwarded said draft to its customary correspondents, the firm of George Steell & Co., who were at that time a firm of merchants at Sun River, aforesaid, in good standing, and who were accustomed to make collections, there being no bank at that place, with instructions to collect and remit; that defendant and said firm of George Steell & Co. at that time had no current account between them; that on September 25, 1884, or thereabouts, the said firm of George Steell & Co. collected said draft, to wit, the sum of $325.57, from the said William Ulm, but kept the money and failed to remit or account for the same to defendant, and on the 18th day of October, A. D. 1884, became insolvent; that defendant never received the money collected on said draft, but, after the insolvency of George Steell & Co., was informed that the money collected on said draft had been, by said George Steell & Co., credited on their books to it, defendant, at the time of the collection thereof, which was the first knowl-

edge the defendant had that the draft had been collected. At the time of the deposit of said draft by plaintiffs with defendant, no instructions were given or special agreement had with reference thereto. Said draft was payable at Sun River, in Lewis and Clarke county, Montana territory, which place is sixty miles distant from Fort Benton, the place of business of defendant, as aforesaid. That on the 15th day of November, A. D. 1884, the plaintiffs demanded of the defendant the payment of said money collected on said draft, but that the same was then and there refused, and that defendant has never paid the same."

The question of how far a bank is liable for the default of a correspondent or collecting agent in regard to a collection is one which has been solved in at least three different ways by the many courts of last resort in the United States which have at different times had the matter under consideration. One class of cases maintains the absolute liability of a bank for any default of its correspondent or collecting agent, in the same manner as it would be for the default of its own employees, on the principle that the bank, by undertaking the collection, obligated itself to see that every proper measure was taken, and regarding the collector as the agent of the bank, and not as the agent of the owner of the commercial paper. A second class of cases holds that the bank is liable only for the exercise of due care and diligence in selecting a trustworthy agent or correspondent, and that there being in the deposit for collection the implied authority to employ a subagent, that such subagent becomes, when chosen, the agent of the holder, and not of the bank which selected him. The third class of cases draws a distinction between the cases in which the payer resides where the bank is situated and the cases where he resides at a distance; in the first place making the bank liable absolutely for any default or wrongful act, and in the second place only making the bank liable for the proper selection of a competent and reliable agent, with proper instruction. 1 Daniel, Neg. Inst. § 341.

The cases of the first class are found principally in the decisions of the courts of the United States and the states of New York, New Jersey, Pennsylvania, Ohio and Indiana. The cases of the second class are found chiefly in the reports of Massachusetts, Connecticut, Maryland, Mississippi, Missouri and Iowa. The third class of cases is made up of those decided by the courts of Illinois, Tennessee, Wisconsin and Louisiana.

Inasmuch as there is such a variety of opinions to be found among the highest courts on this important question, it is proposed to examine at some length such of them as are accessible to us, and thence deduce what we consider to be the true rule governing such cases.

There has never been any adjudication on a question similar to this in this court; and, so far as concerns this territory, this is a case of first impression. We will review these cases in their chronological order.

The English cases concur in holding the bank which receives the paper for collection liable, in any event, for the default of its correspondents; and this agrees with the line of decisions rendered by the supreme court of the United States and other national courts, and the doctrine laid down in the court of appeals of New York and the other courts which have followed these authorities. It has been held in the house of lords, that, where Edinburgh bankers transmitted a bill to London bankers who forwarded it to their correspondents in Calcutta, who in turn collected it and failed, that the Edinburgh bankers were liable to the owner of the bill on the ground that they, being agents to collect the bill and the collection being made, their principal could not be called on to suffer any loss by the conduct of their subagents, there being no privity between them. *Mackersy* v. *Ramsay*, 9 Clark & F., 818–850; H. of L. R., cited in Broom, Leg. Max. (6th Amer. ed.) 603.

In the year 1827 the supreme court of Connecticut said: "Where Lawrence, residing in New York, having drawn a bill on a person in Stonington, in this state, payable to his

own order, indorsed it in blank, and lodged it in a bank in
New York for collection, the cashier of that bank indorsed
it in blank, and forwarded it to the Eagle Bank at New
Haven. The cashier of the latter bank indorsed it in the
same manner, and transmitted it to the Stonington Bank,—
each of these indorsements being made for the purpose of
collection only. The acceptor paid the amount of the bill
to the Stonington Bank, and in an action brought by the
drawer against this bank to recover the sum so paid, as
money received by the defendant to the plaintiff's use, it
was held that parol evidence was admissible to show the
nature of the indorsements, and the purpose for which they
were made. In such case the successive indorsees were
merely agents of the drawer for the collection and trans-
mission of his money; and, further, the Stonington Bank
was not the factor or banker of the Eagle Bank, nor had
the Stonington Bank, as agent or in any other capacity, a
lien on the avails of the bill for the general balance of its
account with the Eagle Bank, by virtue of which it was en-
titled to set off such avails against such balance." *Law-
rence* v. *Stonington Bank*, 6 Conn. 521.

In *Mechanics' Bank* v. *East*, 4 Rawle, 385, decided by the
supreme court of Pennsylvania in 1834, the bills were drawn
and deposited in bank, under a special agreement that they
were to be transmitted to Virginia for collection, and the
facts show that the bank carried out the contract, and hence
the depositor could not recover. Then it cannot be con-
sidered a case parallel with the one at bar, though in the
opinion the discussion covers the principles involved herein.
*Mechanics' Bank* v. *East*, 4 Rawle, 384, 385.

The question came before the supreme court of Connecti-
cut again in 1839, and the case of *Lawrence* v. *Stonington
Bank* is quoted and confirmed in the following language:
" A., residing at Saybrook, in this state, being the holder of
a bill of exchange, drawn by B., in London, on C., in New
York, and accepted by C., payable to the order of A., in-
dorsed it, and transmitted it, some time before it became

due, to the East Haddam Bank for collection. The cashier of this institution, without indorsing it, transmitted it with other bills to the Merchants' Exchange Bank in New York for collection. When it came to maturity, the latter bank had it presented to C., who then was and still is insolvent, for payment; and payment not being made, it was protested for non-payment, and due notice was given to B., the drawer, but no notice was given to the East Haddam Bank; and it, supposing the bill had been paid in New York, credited A. with the amount, and paid it to him on his check. On discovering the mistake, the East Haddam Bank sought to recover back the money so paid, in an action for money had and received against A. It was held that the plaintiff was not precluded from a recovery (1) by reason of its not having indorsed the bill before it was transmitted to the Merchants' Exchange Bank, or advised that bank of A.'s place of residence; or (2) on the ground that the plaintiff was responsible for the default of the collecting bank; or (3) by reason of its having credited A. with the amount of the bill and paid over the money to him. Consequently, the plaintiff having obtained a verdict was entitled to retain it." *East Haddam Bank* v. *Scoville*, 12 Conn. 303.

The leading New York case on this subject is *Allen* v. *Merchants' Bank of New York*, decided in 1839, and reported in 22 Wend. 215–244. In that case reference is had to a case decided by Chief Justice Marshall (*Bank of Washington* v. *Triplett*, 1 Pet. 25), and from which it is distinguished, and to the English case of *Van Wart* v. *Woolley*, 3 Barn. & C. 419, which it follows on the point under consideration. The court of errors was divided in the case of *Allen* v. *Merchants' Bank of New York*, by a vote of fourteen to ten; and the following principle arising out of this case was resolved: "Resolved, that when a bank or broker or other money dealer receives, upon a good consideration, a note or bill for collection in the place where such bank, broker or dealer carries on business, or at a distant place, the party receiving the same for collection is liable for the

neglect, omission or misconduct of the bank or agent to whom the note or bill is sent, either in the negotiation, collection or paying over the money, by which the money is lost, or other injury sustained by the owner of the note or bill, unless there be some agreement to the contrary, expressor implied." 22 Wend. 244.

In the first Massachusetts case on this subject (in 1839) it is said by Shaw, C. J., in delivering the opinion of the court, that when a note is deposited with a bank for collection, which is payable at another place, the whole duty of the bank so receiving the note in the first instance is seasonably to transmit the same to a suitable bank or agent at the place of payment; and, as a part of the same doctrine, it is well settled that, if the acceptor of a bill or a promissory note has his residence in another place, it shall be presumed to have been intended and understood between the depositor for collection, and the bank, that it was to be transmitted to the place of residence of the promisor, and the same rule shall then apply as if, on the face of the note, it was payable at that place; citing *Bank of Washington* v. *Triplett*, 1 Pet. 25; *Allen* v. *Merchants' Bank*, 15 Wend. 482; *Jackson* v. *Union Bank*, 4 Har. & J. 146; *Lawrence* v. *Stonington Bank*, 6 Conn. 528; *Fabens* v. *Mercantile Bank*, 23 Pick. 332.

In the case of *Wingate* v. *Mechanics' Bank* it was decided by the supreme court of Pennsylvania (in 1848), that where a bank in Pennsylvania received for collection a note payable in Mississippi, under an agreement to collect it for a commission of seven per cent., and transmitted it to a bank in Rodney, Mississippi, where payment was refused, and the Pennsylvania bank neglected to give information to the owner of the non-payment, and to return the note to him within a reasonable time, so that it was barred by the statute of limitations, it thereby became liable to pay the note and interest, less the seven per cent. commission. *Wingate* v. *Mechanics' Bank*, 10 Pa. St. 107. This case turns upon an express contract between the parties, evidenced by the

peculiar circumstances of the case, and really does not fall within any of those classes referred to; and, though quoted as authority in some of the leading cases, can hardly be so considered in cases parallel with the one at bar.

The supreme court of Massachusetts, in *Dorchester & Milton Bank* v. *New England Bank* (decided in 1848), follows the case of *Fabens* v. *Mercantile Bank*, 23 Pick. 330, and confirms it as well founded in principle, and supported by a decided weight of authority. The case of *Allen* v. *Merchants' Bank*, 22 Wend. 215, is said to be the only opposing decision, and is criticised severely. *Dorchester & Milton Bank* v. *New England Bank*, 1 Cush. 186.

This question was again incidentally before the supreme court of Massachusetts in 1852, in the case of *Warren Bank* v. *Suffolk Bank*, and the cases of *Fabens* v. *Mercantile Bank*, 23 Pick. 330, and *Dorchester & Milton Bank* v. *New England Bank*, 1 Cush. 186, were quoted and followed; and the cases of *Baldwin* v. *Bank of Louisiana*, 1 La. Ann. 13, and *Bellemire* v. *Bank of United States*, 4 Whart. 105, were cited with approval. The case of *Allen* v. *Merchants' Bank*, 22 Wend. 215, is referred to, but disregarded. The decision in the case of *Warren Bank* v. *Suffolk Bank* is rested, however, on an implied agreement between the parties arising from a known usage of long standing among the banks of Boston. It was held that a bank receiving a note for collection was not liable to its customer for the negligence of a notary to whom the collecting bank had handed the note for demand and protest. *Warren Bank* v. *Suffolk Bank*, 10 Cush. 585.

In 1852 the court of appeals of the state of New York, in the well-considered case of *Montgomery County Bank* v. *Albany City Bank*, reviews all the cases which had been decided in that state up to that time, and Mr. Justice Jewett, in delivering the opinion of the court, uses the following language: "I consider it a rule of law well settled in this state, that when a bank receives from the owner a bill for collection, payable either at the place where such bank

carries on its business, or at some distant place, it thereby becomes the agent of the owner for the collection; and in the discharge of its obligations as such, if the bill has not been accepted, it is bound to present the same for acceptance without unreasonable delay, as well as to present the same for payment when it becomes payable; and, if not accepted when presented for that purpose, or not paid when presented for payment, it must take such steps, by protest and notice, as are necessary to charge the drawer and indorser, or it will be liable to its principal, the owner, for the damages which the latter sustains by any neglect to perform such duties, unless there be some agreement to the contrary, express or implied. And if it be necessary or convenient for the bank to employ some other bank or individual to collect the bill, either at the place of its location or at a distant place where the bill is payable, and it does employ another bank or individual, to whom it transmits the bill for that purpose, the latter, on receiving the bill, and entering upon the discharge of the trust, becomes the agent of the former bank, and not of the owner; and, in the absence of any agreement to the contrary, is answerable to it for any neglect in the discharge of its duties as agent whereby the former bank sustains any loss or damage. The principle is that where a trust is confided to an agent, and he whose interest is intrusted is damnified by the neglect of one whom the agent employs in the discharge of the trust, the agent employed shall answer to the person damnified." *Montgomery County Bank* v. *Albany City Bank*, 7 N. Y. 460, 461.

In 1854 the court of appeals of New York again reviewed the cases previously decided, in the case of *Commercial Bank of Pennsylvania* v. *Union Bank of New York*. That was a case where the Bank of Wilmington was the owner of a bill of exchange, payable at sight, at Troy, and indorsed and transmitted to the plaintiff, the Pennsylvania Bank, under an arrangement by which the latter collected and retained the proceeds of paper thus remitted to it, and,

with the same, redeemed the circulating notes of and paid drafts drawn by it. The Bank of Wilmington and the Pennsylvania Bank indorsed and transmitted the bill to the New York bank, its correspondent in New York, for collection, and the same was by the latter sent to the Troy City Bank for the same purpose, which latter bank collected the bill, and surrendered it to the drawee. The court of appeals, in an elaborate opinion, uses the following language:

"The liability of the defendants for the acts and omissions of the Troy City Bank, and their officers and agents, in and about the collection of the draft, is no longer an open question. It was definitely settled by the court for the correction of errors in *Allen* v. *Merchants' Bank of New York*, 22 Wend. 215, in which it was resolved that when a bank, broker or other money dealer receives, upon a good consideration, a note or bill for collection, in the place where such bank, broker or dealer carries on business, or at a distant place, the party receiving the same for collection is liable for the neglect, omission or other misconduct of the bank or agent to whom the bill or note is sent, either in the negotiation, collection or paying over the money, by which the money is lost, or other injury sustained by the owner of the note or bill, unless there be some agreement to the contrary, express or implied; and this doctrine was reasserted and directly approved by this court in *Montgomery County Bank* v. *Albany City Bank*, decided December, 1852, in this court."

"If a liability has been incurred by the defendants, by reason of an omission of duty on the part of the bank at Troy, either in the payment of the money collected, or in charging the prior parties to the bill, upon its dishonor by the drawee it is quite evident that such liability is to the plaintiff, which alone can enforce it by action. To this effect is the decision of *Montgomery County Bank* v. *Albany City Bank*. It was there held that the plaintiff, who had transmitted a bill payable in New York to the Albany City

Bank for collection, could not maintain an action against the Bank of the State of New York, to which, as the correspondent and agent in New York of the Albany City Bank, the latter had transmitted it for the same purpose, for an omission to charge the drawer and indorsers, upon non-payment by the drawee; reversing the decision of the supreme court holding the contrary doctrine.    8 Barb. 396. Jewett, J., says: ' And, if it be necessary or convenient for such bank [the bank receiving the bill or note for collection] to employ some other bank or individual to collect the bill at the place of its location, or at a distant place where the bill is payable, and it does employ such other bank or individual, to whom it transmits the bill for that purpose, the latter, on receiving the bill, and entering upon the discharge of the trust, becomes the agent of the former bank, and not of the owner, and, in the absence of any agreement to the contrary, is answerable to it for any neglect in the discharge of its duties as such agent, whereby the former bank sustains any loss or damage.'    And again: ' The New York State Bank was the agent directly guilty of the neglect.    The bank was employed to do this service by the plaintiff's agent, the Albany City Bank, as its agent, to whom it was alone responsible for its acts and neglects; and the latter, according to the settled rule, was responsible to the plaintiff for its acts and omissions in the matter; there being no agreement to the contrary, express or implied.'

" The doctrine put forth in *Bank of Orleans* v. *Smith,* 3 Hill, 560, that where a note payable at a distance is deposited with a bank for collection, and the latter transmits it to another bank for the same purpose, both are to be regarded as agents for the holder, is disapproved in the same opinion.    Indeed, it seems to follow necessarily, from the adjudication in *Allen* v. *Merchants' Bank*, that the defendant, being the agent of the plaintiff, is responsible to it, as principal, for the proper discharge of the duties of the agency.    The contract of the agent respecting the business

of the agency, which the law implies, is with his immediate principal; and, where the relation of principal and agent is established, as it is between the parties to this action, by the authorities cited, the contract and consequent rights and liabilities result as necessary sequents, unless expressly provided against by agreement." *Commercial Bank of Pennsylvania* v. *Union Bank of New York*, 11 N. Y. 211, 212.

The supreme court of Ohio, in 1858, in the case of *Reeves* v. *State Bank of Ohio*, 8 Ohio St. 468, in a very learned opinion by Brinkerhoff, J., reviewed all of the English and American cases up to that date, and elects to follow the decisions of the New York court of appeals, which, in turn, had followed the English doctrine. In that case the correct rule is stated to be as follows: "Where a bank in this state receives for collection a draft payable in New York, and, for the same purpose, forwards the draft to its correspondent in New York, the bank here is responsible to the owner for the conduct of such correspondent, and for the proceeds of the draft, immediately upon its collection by such correspondent. Such correspondent is the agent of the bank here, and not the subagent of the owner of the draft; and payment to the agent is payment to the bank, unless there was some agreement or authority between the owner and the bank, beyond the mere fact of the draft being received for collection." The doctrine laid down in *Bank of Orleans* v. *Smith*, 3 Hill, 560; *East Haddam Bank* v. *Scoville*, 12 Conn. 303; and *Fabens* v. *Mercantile Bank*, 23 Pick. 330, is rejected as not sustained by weight of reason and authority. And the cases of *Lawrence* v. *Stonington Bank*, 6 Conn. 521; *Bank of Metropolis* v. *New England Bank*, 1 How. 234; *Gordon* v. *Kearney*, 17 Ohio, 572; and *Wilson* v. *Smith*, 3 How. 763, are distinguished from cases such as that and this by the fact that they were all suits brought by the owners of bills and notes deposited for collection with banks or bankers, against a secondary agent to whom they had been transmitted by the primary agent; and in all of them the plaintiffs were entitled to recover, subject, however, in

some of the cases, to the right of the secondary agent to retain for a general balance existing in his favor against the primary agent. *Reeves* v. *State Bank of Ohio*, 8 Ohio St. 468.

This Ohio case has since been followed as a leading case in upholding the doctrine first announced in America by the New York court of appeals.

The supreme court of Wisconsin, in 1860, decided, in the case of *Stacy* v. *Dane County Bank*, " that the contract implied from the receipt, by a bank, of a note for collection, payable at a distance from its place of business, is not absolutely to make due presentment of the note, and give due notice of its non-payment, but to place it in the hands of some competent and responsible agent for that purpose, and that, if the bank exercises reasonable care and skill in selecting such agent, it is not liable for his default." *Stacy* v. *Dane County Bank*, 12 Wis. 707.

In the case of *Ætna Ins. Co.* v. *Alton City Bank*, decided by the supreme court of Illinois in 1861, Mr. Justice Walker, delivering the opinion of the court, after reviewing many cases, says: "Where a bank receives a bill or note for collection against a drawee or maker, resident at the place of the bank, or where the bank undertakes for its collection by their own officers, there can be no doubt that it would be liable for any loss that might result from neglect; but, when received for transmission, it has fully discharged its duty by sending the instrument in due season to a competent, reliable agent, with proper instructions for its collection." *Ætna Ins. Co.* v. *Alton City Bank*, 25 Ill. 243.

In 1872 the supreme court of Pennsylvania adopts the doctrine before announced in New York. The case of *Bradstreet* v. *Everson*, 72 Pa. St. 132, was a case where a collection agency received for collection in Pittsburgh certain acceptances, and transmitted the same to Wood, an attorney in Memphis, who collected, and failed to remit. Bradstreet & Sons, the collection agency, was held liable. The opinion in this case, rendered in 1872, reviews many

similar cases, and clearly establishes the principle, which seems to us very applicable to the case at bar; the responsibility of bankers for collections undertaken appearing to be equally as great as that of collecting agents or attorneys at law.

The last New York case which has fallen under our notice was decided in 1872. In that case (*Ayrault* v. *Pacific Bank*), the court of appeals of New York decided a case under the following state of facts: Ayrault, a customer of the Pacific Bank, deposited with the said bank two promissory notes for collection. They were not paid, and were handed by the bank to a notary for demand and protest. He failed to properly protest the notes, whereby the indorsers were discharged, and collection was lost. The court in its opinion says: "The doctrine established by the court for the correction of errors in *Allen* v. *Merchants' Bank*, 22 Wend. 215, has been repeatedly reaffirmed, and has never been questioned in this state. By the receipt of negotiable paper for collection the bank or banker receiving it undertakes that the necessary means shall be taken to charge the drawer, indorser, and other parties, upon default, or refusal to pay or accept. A bank receiving a bill or promissory note for collection, whether payable at its counter or elsewhere, is liable for any neglect of duty occurring in its collection by which any of the parties are discharged, whether of the officers and immediate servants, or of the agents of the bank or its correspondents, or agents employed by such correspondents." *Ayrault* v. *Pacific Bank*, 47 N. Y. 573.

In 1874 the supreme court of Tennessee decided the case of *Bank of Louisville* v. *Bank of Knoxville*, 8 Baxt. 105, in which it reviews numerous cases, and holds " that the more reasonable and just construction of the nature of the undertaking of the bank in which the bill is deposited for collection is that, when the bill is payable at another and distant place, the bank so receiving the bill discharges itself of liability by transmitting the same, in due time, to a suit-

able and reputable bank or other agent at the place of payment; and in such case it is manifest that a subagent must be employed, and the assent of the principal is implied, as it cannot be said that the receiving bank was expected or bound to send one of its own officers to the distant point of payment for the purpose of personally attending to the collection for the very inadequate compensation usually paid to banks for such service." *Bank of Louisville* v. *Bank of Knoxville*, 8 Baxt. 105.

There seem to have been four cases decided in the circuit courts of the United States, to wit: *Bank of Trinidad* v. *First Nat. Bank*, 4 Dill. 2J0; *Hyde* v. *First Nat. Bank*, 7 Biss. 156; *Kent* v. *Dawson Bank*, 13 Blatchf. 237; *Taber* v. *Perrot*, 2 Gall. 565,— in all of which the case of *Allen* v. *Merchants' Bank* is believed to have been followed, though we have only been able to use these authorities at second hand, the original reports not being accessible.

This brings us to an examination of the cases decided by the supreme court of the United States, in which the English doctrine, which had been previously followed in New York, is adopted, after a full examination of all the leading authorities.

The question at bar first came directly before the supreme court of the United States in 1875. In the case of *Hoover* v. *Wise*, 91 U. S. 308, Mr. Justice Hunt, delivering the opinion of the court, discusses a long line of cases, English and American, and concurs in the principles laid down in the case of *Reeves* v. *State Bank of Ohio*, 8 Ohio St. 466, and in *Allen* v. *Merchants' Bank*, 22 Wend. 215, and in other New York cases, and in *Bradstreet* v. *Everson*, 72 Pa. St. 124, and other cases to the same effect. This case presents the following state of facts: An account was delivered by its owners, Wise & Co., to Archer & Co., a collection agency in New York, with instructions to collect. Archer & Co. sent it to McLennan, in Nebraska. Oppenheimer, the debtor, was in failing circumstances, and had already committed several acts of bankruptcy, when McLennan pre-

vailed on him to confess judgment in favor of Wise & Co. The money was collected on this judgment, and paid over to Archer & Co., but was not by them paid over to Wise & Co. Oppenheimer was thrown into bankruptcy, and Hoover, his assignee, sued Wise & Co. to recover the money paid in violation of the bankrupt law. The supreme court held that McLennan was the agent of Archer & Co., and not of Wise & Co., and that Wise & Co. were not responsible for the guilty knowledge of the attorney, so as to render them liable for the money collected. This case, as viewed by the court, falls clearly within the principles laid down by the cases cited and discussed, and the dissenting opinion of Mr. Justice Miller and others is not based on any doubt as to the correctness of the principle of those cases, but because, in their view, the facts of the case did not bring it within the principle announced therein; that the judgment having been taken in the name of Wise & Co., and they receiving the benefit of it, and they being liable for costs in the event of failure, and Archer & Co. not being liable, and having no interest in the account, and not being liable to the attorney for the fees, that McLennan was the attorney of Wise & Co., and not of Archer & Co. So the dissenting opinion by no means weakens the authority of this case in so far as the case under consideration is concerned. *Hoover* v. *Wise,* 91 U. S. 308.

The supreme court of Iowa, in 1881, reviews a large number of cases, and arrives at the following conclusion: " Where the holder of a bill of exchange, payable at a distant place, deposits it with a local bank for collection, he thereby assents to the course of business of banks to collect through correspondents, and the correspondent of the local bank to which the bill is forwarded becomes his agent, and is responsible to him directly for negligence in failing to present the bill for payment within the proper time." *Guelich* v. *National State Bank of Burlington,* 56 Iowa, 434. The cases of *Hyde* v. *Planters' Bank,* 17 La. 560; *Baldwin* v. *Bank of Louisiana,* 1 La. Ann. 13; *Tier-*

*nan* v. *Commercial Bank,* 7 How. (Miss.) 648; *Agricultural Bank* v. *Commercial Bank,* 7 Smedes & M. 592; *Bowling* v. *Arthur,* 34 Miss. 41; *Jackson* v. *Union Bank,* 6 Har. & J. 146; *Citizens' Bank* v. *Howell,* 8 Md. 530, and other cases, are cited by the Iowa supreme court as sustaining this view of the question (56 Iowa, 436). These authorities are not accessible to us, and have not been examined. However, we presume they follow in the wake of Massachusetts and Connecticut cases, which seem to lead that line of decisions.

The case of *Britton* v. *Niccolls,* decided by the supreme court of the United States (104 U. S. 757), does not fall parallel with the cases at bar. It was decided in accordance with the decisions of the supreme court of Mississippi, and on the force of a local statute of that state prescribing certain duties for a notary public, and treating him as a public officer; and this case merely holds that the notary was not, in this matter, the agent of the bankers, and that for any failure to perform his duties he alone was liable. 104 U. S. 766   The decision was not made upon any general principle of commercial law, and establishes none, and is clearly distinguished from the later case of *Exchange Nat. Bank* v. *Third Nat. Bank,* 112 U. S. 284–287; *S. C.* 5 Sup. Ct. Rep. 141, where it is discussed, and from the case now under consideration, where no such questions as were there decided are involved.

The latest discussion and decision of the question presented in the case at bar by any court of last resort was had in 1884 by the supreme court of the United States, in the case of *Exchange Nat. Bank of Pittsburgh* v. *Third Nat. Bank of New York,* 112 U. S. 280. The doctrine of the liability of the bank receiving a draft for any default of its correspondent is thoroughly discussed, and clearly enunciated. In that case the Pittsburgh bank had sent to the New York bank several unaccepted drafts for collection. The New York bank sent them to a bank in Newark. The Newark bank failed to take the proper acceptances, and by this negligence the payment of the drafts failed to be made.

The supreme court held that the New York bank was liable
to the Pittsburgh bank for all damages that it had sustained
by the negligence of the Newark bank. In the course of
the opinion, Mr. Justice Blatchford, delivering the opinion
of the court, says: "On its receipt of the drafts, under these
circumstances, an implied undertaking by the New York
bank arose to take all necessary measures to make the de-
mands of acceptance necessary to protect the rights of the
holder against previous parties to the paper. From the
facts found, it is to be presumed that the New York bank
took the drafts from the plaintiff in the usual course of
business. . . . The contract then becomes one to per-
form certain duties necessary for the collection of the paper
and the protection of the holder. The bank is not merely
appointed an attorney, authorized to select other agents to
collect the paper. Its undertaking is to do the thing, and
not merely to procure it to be done. In such case the bank
is held to agree to answer for any default in the per-
formance of its contract; and whether the paper is to be
collected in the place where the bank is situated, or at a
distance, the contract is to use the proper means to collect
the paper, and the bank, by employing subagents to perform
a part of what it has contracted to do, becomes responsible
to its customer. . . . Whether a draft is payable in the
place where a bank receives it for collection, or in another
place, the holder is aware that the collection must be made
by a competent agent. In either case there is an implied
contract of the bank that the proper measures shall be used
to collect the draft, and a right on the part of the owner to
presume that proper agents will be employed; he having
no knowledge of the agents. There is, therefore, no reason
for liability or exemption from liability in one case which
does not apply to the other." *Exchange Nat. Bank of Pitts-
burgh* v. *Third Nat. Bank of New York*, 112 U. S. 280.

The reasoning of this opinion effectually obliterates all
distinctions between the cases of the second and third classes
which have been attempted to be drawn in some of the

courts of last resort, as hereinbefore adverted to, and as commented on by text writers in treating this subject. And the doctrine maintained in the first class of cases mentioned above, and upheld by Senator Daniel in his valuable work on Negotiable Instruments, is clearly and ably sustained, and established to our entire satisfaction. This is believed to be the latest enunciation of the views of the supreme court of the United States upon this subject, and is binding as an authority on this court, and, aside from this, it is beyond a doubt the correct doctrine, sustained by the weight of reason and the general current of authority.

The foundation for all the differences of opinion among the learned judges who have had the matter under consideration appears clearly to rest in the interpretation of the implied contract between the depositor and the bank at the time the negotiable paper is deposited for collection. Where there is an express contract, it must, of course, be followed, and there is no room for a difference of opinion; and all of the decisions herein styled cases of the second and third classes are founded on the idea that the course of business or the customs of bankers, or the necessities of the case, or the peculiar circumstances, raise some other presumption than the one that the bank receiving the deposit for collection undertakes to collect it, and assumes all the risks from the negligence or default of the agents which it employs. We do not believe that any other contract can be inferred from the mere tender and acceptance of negotiable paper for collection. No matter where the debtor may reside, nor what agencies are necessary to employ in the collection, the depositor is not supposed to be acquainted with the methods to be employed by the bank in collecting its paper, or the carefulness, skill, solvency or honesty of the agents whom it may be necessary to employ in such collections. Besides, it is the universal custom of banks, on receiving collections, to pass them to the credit of the owner, and to indorse and transmit them to their correspondents, where they are in like manner passed to the credit of the indorser, and so on

until collection; and, if the collection fails on account of the insolvency of the debtor, and through no fault of any intermediate bank or agent, the paper is returned, and charged back, until it reaches the original depositor and indorser, who is called upon to make it good. Such was the course pursued in the case at bar, and the defendant is clearly liable for the amount collected.

On mature consideration of the authorities, supporting all shades of opinion on this subject, we fully agree with the views expressed in 1 Daniel, Neg. Inst. 342, and hold that, in the absence of a special contract, a bank is absolutely liable for any laches, negligence or default of its correspondent whereby the holder of negotiable paper suffers loss. By such a rule alone can the depositor who intrusts his business to a bank be secure against carelessness or dishonesty on the part of collecting agencies employed by banks to carry out their contracts. Banks can easily avoid the effects of this stringent rule by making special contracts in special cases, or declining to undertake collections at points where they have any fears as to the reliability or solvency of the agents whom they will be obliged to employ; but when they undertake collections, either at their own location, or at distant points, without a special contract limiting their liability, they must be held to do so for a sufficient consideration, and to be responsible absolutely to the owner of negotiable paper for the payment of all money collected thereon, and for all losses occurring through the negligence of the agent, resulting in a failure to make such collection.

In accordance with these views, the judgment is hereby reversed, and the case remanded for a new trial.

*Judgment reversed.*

GALBRAITH, J., and BACH, J., concur.