The First National Bank of Manning, Appellant, v. The German Bank of Carroll County et al.

**Banks:** NEGLIGENCE OF ASSISTANT CASHIER ACTING AS NOTARY. The negligence of a notary public in failing to learn the residence of an endorser of an inland draft and give him proper notice of its dishonor is not chargeable to a bank of which he is assistant cashier, and which placed the draft, which it held only for collection, in his hands for protest, although no protest of the draft was required by law, but the law recognized the giving of notices, in case of protest, as part of the official duty of a notary.

SAME. As, under the statutes of Iowa, a notary public is authorized to give notice of protest, the selection by a bank to whom a draft is sent for collection of a notary to serve protest on the drawee, shows such prudence and diligence as would exempt it from liability on failure of notary to properly perform his duty.

*Appeal from Carroll District Court.*—Hon. Z. A. Church, Judge.

Monday, February 6, 1899.

The plaintiff purchased of Farneman a draft indorsed by him, drawn by the Bank of Kirkman, November 7, 1892, on the First National Bank of Carroll, on November 8th, and sent it for collection to the Valley National Bank of Des Moines, which, on the following day, forwarded it to the defendant for collection. It was received and presented to the drawee for payment before ten o'clock on the tenth day of November, and payment refused. The draft was at once placed in the hands of W. A. Arts, a notary public, and also assistant cashier of the defendant bank, with instructions to protest for nonpayment. He made no inquiry for the residence of Farneman, who was engaged in the chicken business at Carroll, but a short distance from the bank, but inclosed notice to him with those to other indorsers to the Valley National Bank of Des Moines. The plaintiff has been

denied recovery in an action against Farneman.   See *Bank v. Farneman,* 93 Iowa, 163.   This action is for the amount of the draft and the expenses and costs incurred in that case. Trial to court, and judgment for the defendant.   The plaintiff appeals.—*Affirmed.*

F. M. *Powers* for appellant.

M. W. *Beach* for appellee.

LADD, J.—That the draft was sent to the defendant bank for collection, and was presented to the drawee for payment, in apt time, admits of no doubt.   *Hamlin v. Simpson,* 105 Iowa, 125.   The exercise of prudence in the selection of a notary public is not questioned.   The very gist of the action is that the defendant is chargeable with the negligence of that officer in failing to learn of Farneman's residence, and notifying him of the dishonor of the draft.   But a notary is a public officer, appointed by the chief magistrate of the state, is under bond for the faithful performance of his duties as such, and keeps a public record of his acts, certified copies of which may be received in evidence.   Code, section 373 *et seq.* He is not a mere agent of the bank, but a public officer sworn to properly discharge his duties to the public.   As such officer, the bank may not control his acts, nor dictate in what manner he shall perform his duties.   If guilty of malfeasance in the performance of an official act, he, and not the bank, is responsible. That this notary was also an employe of the bank can make no difference.   When acting as such officer, he was not discharging his duties as servant.   The positions were distinct, and his acts in the capacity of an officer of the state had no connection with the services he owed the bank.   Again, the defendant was a mere agent for the collection of the draft, and, owing to its dishonor, deposited it with a notary for protest.   "A subagent is accountable, ordinarily, only to his superior agent, when employed without the assent or direction of the principal.

But, if he be employed with the express or implied assent of the principal, the superior agent will not be responsible for his acts. There is, in such a case, a privity between the subagent and the principal, who must, therefore, seek a remedy directly against the subagent for his negligence or misconduct." *Guelich v. Bank,* 56 Iowa, 435. In making such collections it is usual to employ a notary, and, in forwarding the draft, there was an implied direction to do so, if necessary. See *Mount v. Bank,* 37 Iowa, 457. If the defendant exercised prudence in making the selection, its responsibility ended. This is all it could have done had the draft been its own, and surely it will not be held to a higher degree of care when acting for others. *Baldwin v. Bank,* 1 La. Ann. 13; *Bank v. Howell,* 8 Md. 530; *Hyde v. Bank,* 17 La. 560; *Tiernam v. Bank,* 7 How. (Miss.) 648; *Bellemire v. Bank,* 4 Whart. 105; *Britton v. Nicolls,* 104 U. S. 766; *Warren Bank v. Suffolk Bank,* 10 Cush. 582; *Stacy v. Bank,* 12 Wis. 629; *May v. Jones,* 88 Ga. 308 (14 S. E. Rep. 552); *Agricultural Bank v. Commercial Bank,* 7 Smedes & M. 592; *Bank v. Butler,* 41 Ohio St. 519; Mechem Agency, section 514. While there is a conflict in opinion, the rule announced is sustained by the weight of authority and the better reason. See collection of cases in 3 Am. & Eng. Enc. Law (2d Ed.) 808, and note to *Isham v. Post* (N. Y. App.) 38 Am. St. Rep. 775 (s. c. 35 N. E. Rep. 1084); also *Allen v. Bank,* 22 Wend. 215.

The distinction between a foreign and an inland bill of exchange should not be overlooked. To charge the makers and indorsers, the former must be protested. Not so with the latter. All that is required is a demand, and, on refusal to pay, notice of dishonor, in order to fix liability of the indorsers of an inland bill; and these may be made and given by the holder, or any one acting in his behalf. By the law merchant, giving notice of dishonor is no part of a notary's official duty, and when he does so he is merely acting as agent of the holder. *Swayze v. Britton,* 17 Kan. 625;

*Allen v. Bank,* 22 Wend. 215; Daniels Negotiable Instrument, section 960. But it is customary for him, in protesting a bill, to give the proper notice of dishonor. Proffiatt Notice, sections 142, 143. And in many of the states the law merchant is so modified that he is required to give notice. Formerly his certificate might not be received as proof of the protest of an inland bill. *Case v. Heffner,* 10 Ohio, 180. By section 378 of the Code, "every notary public is required to keep a true record of all notices given or sent by him, with the time and manner in which the same were given or sent and the names of all the parties to whom the same were given ·or sent, with a copy of the instrument in relation to which the notice is served and of the notice itself." Section 379 requires his record and °official papers to be filed· with the clerk of the court upon his death, resignation, or removal, and provides for certified copies. Very evidently this is for the purpose of perpetuating proof of the notice as well as of the demand and protest. Section 3054⁻ permits a notary "to inform the indorser or any party to be charged, if in the same town or township, by notice deposited in the nearest post office to the parties to be charged, on the day of the demand, and no other notice shall be necessary to charge such party." The advantage in having an inland bill protested by a notary, and notice given by him, is that the evidence is thus perpetuated; and notice to indorsers living in the same town or township may be given by mail, instead of personally. These statutes clearly recognize giving notice as a part of the notary's official duty. Indeed, the term "protest" is ordinarily used as including the entire proceeding necessary to charge indorsers. Notaries are nearly always resorted to for this work, and the owner of the draft may be assumed to have intended this course to be pursued. As said in *Tiernam v. Bank,* "No agent could have been selected with more propriety for the performance of this duty than one whose profession and office were calculated to fit him peculiarly for the discharge. They are almost universally resorted to for the

purpose. We cannot perceive, therefore, that the bank was wanting either in the degree of skill or diligence which is required under such circumstances to exempt an agent from liability." *Baldwin v. Bank, supra; Hyde v. Bank, supra; Swedes v. Bank,* 20 Johns. 384; *Bellemire v. Bank,* 4 Whart. 105, 1 Miles, 173; *Bank v. Howell, supra; Fisher v. Bank,* 7 Blackf. 610; *Turner v. Rogers,* 8 Ind. 139. *Bank v. Ober,* 31 Kan. Sup. 599 (3 Pac. Rep. 324), is based on the finding that the statutes of Kansas do not authorize the notary to give notice. Our conclusion rests on statutes allowing a notary, as such, to perform this duty. Surely, the bank acted prudently in intrusting to a public officer the doing of that which was incumbent on him as 'an officer of the law to do. —*Affirmed.*